OPINION
LILLEHAUG, Justice.
In this appeal from the denial of a motion to dismiss for insufficiency of process, we consider the question of whether a summons and complaint signed by an attorney licensed outside the state of Minnesota are* legal nullities, or whether the defective signature may be cured. In the related conditional cross-appeal, we consider whether the district court erred in granting a motion to dismiss as to several defendants for insufficiency of service. Because we conclude that the Minnesota Rules of Civil Procedure afford a district court the discretion to allow an amend *265 ment to cure a defective signature on a summons and complaint, we affirm the court of appeals’ judgment in part.! However, because we conclude that the plaintiffs produced sufficient evidence of effective. service to shift the burden to ..¡the defendants to prove that service was not effective and that burden was not carried, we reverse in part.
I.
On January 22, 2010, Mya DeCook — the daughter of Jennifer and Ryan DeCook^— was born at Olmsted Medical Center (the Medical Center) in Rochester. In January 2014, Stephen Offutt and Patrick Thron-son, attorneys for the DeCooks, contacted the Medical Center’s risk management department to discuss how to serve process upon the Medical Center and the doctors and nurses involved in Mya’s birth in order to commence a medical malpractice suit.[1] Though the record does not reflect that the attorneys contacted the doctors and nurses themselves, the Medical Center’s compliance officer, Barbara Graham, told the attorneys that, “if by email, I am authorized to accept service for the 3 physicians [Palmer, Perrone, and McKeon] ... and for the 2 named nurses [Hanson and Pratt].”
At that time, the identity of Nurse Morrow was unknown, and she was listed on the case caption as “Jane Doe, R.N.” After Graham.determined that Jane Doe was in fact Nurse Morrow, Graham contacted Of-futt and inquired about revising the caption to add Morrow’s name. In that emaii, Graham also confirmed that she had obtained Morrow’s authorization for Graham to accept service of process, stating that Morrow “has given me her ok to accept service for her.”
Relying on Graham’s representations, the DeCooks’ attorneys attempted ,to serve the Medical,,Center and the six individual defendants by emailing a copy of the summons and complaint to Graham on January 14, 2014; Although the signature blocks in the summons and. complaint bore the printed names of both Offutt (licensed to practice in Minnesota) and Thronson (licensed only in Maryland), the documents were signed only by Thronson. Graham signed and returned an acceptance of service form on January 15, stating: “I, Barbara Graham, R.N., Compliance Office of Olmsted Medical Center, hereby admit and accept service_on behalf of’ the Medical Center and each of the six individual defendants.
On January 31, 2014, all defendants filed a Joint and Separate Motion to. Dismiss based on Minn. R, Civ. P. 12.02(b) (lack of personal jurisdiction), (c) (insufficient process), .and (d) (insufficient service of process). Thronson contacted the attorney who filed the.motion in an attempt to learn more, but was unsuccessful. Thronson and Offutt,. concerned by the motion, .sent copies of the summons and complaint (still signed only by Thronson) to the appropriate sheriffs offices' for personal, service upon the defendants; Sheriffs deputies personally served Nurse Pratt on February 24 and Nurse Hanson on February 27. Also on February 27, a sheriffs deputy attempted to serve the remaining defendants ;by leaving copies of.-the process at the Medical Center with an employee.
The defendants filed a memorandum in support of their motion to dismiss on March 4, 2014, arguing that the summons and complaint were void because they contained only Thronson’s signature, that the *266 defendants were never served personally, and that the purported service via email was ineffective. The defendants filed affidavits from Graham in support of the motion. Neither of Graham’s two affidavits denied that the six individual defendants had authorized her to accept service of process by email on their behalf, and no defendant filed an affidavit denying that he or she had given Graham such authorization. In response, Offutt promptly appended his signature to a copy of the summons and complaint, and the amended summons and complaint were again mailed to the appropriate sheriffs for service. Again, Pratt and Hanson were personally served, and the process for the remaining defendants was left with an employee at the Medical Center.
The district court denied the motions to dismiss for insufficient process, reasoning that, although the summons and complaint were defective due to the lack of a Minnesota attorney’s signature, the Rules of Civil Procedure granted the court discretion to allow the summons and complaint to be cured by amendment, which the court allowed. The court also denied the motions to dismiss for insufficient service of process as to the Medical Center, Pratt, and Hanson, but -granted the motions with respect to the remaining defendants.[2] The court found that Pratt and Hanson had been personally served in accordance with Minn. R. Civ. P. 4.03, and that the Medical Center had been validly served through the email to Graham.[3]
The Medical Center, Pratt, and Hanson appealed, arguing that the summons and complaint were legal nullities and that the court erred in allowing the DeCooks to amend them. The DeCooks filed a cross-appeal, arguing that the district court erred in concluding that the January 14 email to Graham did not constitute effective service upon the six' individual defendants. The court of appeals affirmed, De-Cook v. Olmsted Med. Ctr., No. A14-1180, 2015 WL 1880319 (Minn.App. Apr. 27, 2015), and we granted review of both appeals.[4]
II.
We turn first to the issue of whether a summons and a complaint signed by an attorney not licensed in Minnesota are legal nullities. Answering this question requires us to interpret Minnesota’s Rules of Civil Procedure and applicable statutes. Such interpretation presents questions of law which we review de novo. Walsh v. U.S. Bank, N.A., 851 N.W.2d 598, 601 (Minn.2014).
A.
The Minnesota rules of court are clear on the need for pleadings such as a complaint to be signed by an attorney licensed in Minnesota. See Minn. R. Civ. P. 11.01; Minn. Gen. R. Prac. 5. A complaint lacking the signature of a Minnesota attorney is defective. The rules, also require a summons to be “subscribed by the plaintiff or by the plaintiffs attorney.” Minn. R. Civ. *267 P. 4.01. In keeping .-with statutory requirements that httorneys not licensed in Minnesota may not practice in the state, see Minn.Stat. § 481.02; we conclude that the Rule 4.01 imperative that a summons be* subscribed by the plaintiff “or by the plaintiffs attorney” requires that a sunn mons not subscribed by the plaintiff be subscribed by an attorney licensed to practice in Minnesota. Accordingly, a summons is defective if it is not subscribed by either the plaintiff or an attorney licensed to practice law in Minnesota. Here, both the summons and the complaint were defective.
B.
Citing our decision in Herrick v. Morrill, 37 Minn. 250, 252, 33 N.W. 849, 850 (1887), the= DeCooks argue that the summons was not defective at all because Offutt’s printed name on the summons’ Signature block constituted a valid ‘‘subscription” of the summons. This argument was not made at the court of appeals and thus is arguably forfeited here. In the interests of clarifying the law for Minnesota practitioners, however, . we choose -to address it. Herrick’s analysis is not applicable here, as Herrick was decided many decades before the effective date (1952) of the Minnesota Rules of Civil Procedure, which apply here.
 Minnesota Rule of Civil Procedure 4.01 requires a summons to be “subscribed by the plaintiff or by the plaintiffs attorney.” “Subscribed” means “signed.” See The American Heritage Dictionary 1737 (5th ed.2011) (“to'sign (one’s name) at the end of a document_”); Black’s Law Dictionary 1655 (10th ed.2014) (containing four relevant definitions, all of which contemplate a written signature). Further, Rule 11.01 requires “[e]very pleading, written motion, and other similar document” to be “signed by at least one attorney of record in the attorney’s individual name” if the party -is represented.- Minn. R. Civ. P. 11.01. Even if a summons is not a “similar document” to a pleading or motion such that it is covered by Rule 11, no good reason exists for different rules to govern a summons as opposed to all other important court documents-. • We conclude that Rule 4.01’s subscription requirement means the summons must be signed. ' -
The DeCooks also argue that the complaint was not defective, as' Offutt ratified ThronsOn’s signature on the complaint by instructing Thronson to sign Offutt’s name for him. Assuming, again, that this argument is not forfeited, it fails. Offutt’s instruction — which was not followed — cannot constitute ratification, as the instruction occurred prior to the unauthorized act the DeCooks. now contend was ratified. See Anderson v. First Nat’l Bank of Pine City, 303 Minn. 408, 410, 228 N.W.2d 257, 259 (1975). Therefore, we reject the De-Cooks’ theories that the summons and the complaint were not defective.
C.
■ Minnesota’s Rules of .Civil Procedure specifically grant district courts the authority “in [their] discretion and on such terms as [they] deem[ ] just” to “allow any summons or other process ... to be amended, unless- it clearly appears that substantial rights” would be prejudiced- by the amendment. Minn. R. Civ.í P. 4.07. This broad discretion encompasses the power to allow a signature defect on the summons to be -remedied. Further; Rule 11.01 provides that “[a]n unsigned document shall be stricken unless omission of the signature is •corrected promptly after being called to the attention of the attorney or party.” Minn. R. Civ. P. 11.01 (emphasis added).
Despite these applicable rules, the defendants and amicus argue that the sum *268 mons and complaint were void and therefore could not be amended because the signature defect is. jurisdictional. They argue that attorneys unlicensed in Minnesota have no authority to commence actions in Minnesota courts, and that because service of a valid summons confers personal jurisdiction over the defendant, see Shamrock Dev., Inc. v. Smith, 754 N.W.2d 377, 382 (Minn.2008), service of a summons signed by an out-of-state attorney does not commence an action at, all. Therefore, they argue, the, district court could not allow amendment of the summons and complaint because no valid summons and complaint existed to be amended.
This position- is at odds with the policies underlying the Rules of Civil Procedure and the way we have previously addressed the amendment of defective summonses and co'mplaints. 'We have repeatedly interpreted the rules regarding the court’s. acquisition of jurisdiction by summons liberally “to avoid defeating an action merely because of technical and formal defects which could not reasonably have misled or prejudiced a defendant.” See Nelson v. Glenwood Hills Hosps., 240 Minn. 505, 511, 62 N.W.2d 73, 77 (1953). Accordingly, as reflected in.the Rules of Civil Procedure, “amendment should be granted freely when justice so requires.” Id. at 513, 62 N.W.2d at 78. To allow amendment of a summons and complaint if the opposing party has not been prejudiced by the defect ensures that the rules help “effect the settlement of controversies upon their merits rather than ... by dismissal on technical grounds.” Indep. Sch. Dist. No. 273 v. Gross, 291 Minn. 158, 165, 190 N.W.2d 651, 656 (1971).
Further, in other circumstances in which personal jurisdiction would otherwise not exist because of defective process, we have held that “[i]f service of summons and complaint results in an intended defendant being fully informed as to the circumstances of the action, the court has acquired sufficient jurisdiction over that defendant, even though an amendment is necessary to correct” the defect, Nelson, 240 Minn. at 513, 62 N.W.2d at 78. If a summons and complaint that name the wrong; entity as a defendant in the lawsuit are correctable, see. id., so should be a summons and complaint with signature defects. Indeed, in a closely analogous case, we held that a complaint signed by a non-attorney could be amended. Save Our Creeks v. City of Brooklyn Park, 699 N.W.2d 307, 310-11 (Minn.2005). In doing so, we specifically rejected the contention that the signature defect made the complaint a legal nullity. Id; cf., Becker v. Montgomery, 532 U.S. 757, 768, 121 S.Ct. 1801, 149 L.Ed.2d 983 (2001) (concluding that where a notice of appeal lacked the required signature, the defect was curable, particularly where the rule in question specifically provided for correction of , an omitted signature).
The defendants place great reliance on our decision in Francis v. Knerr, 149 Minn. 122, 182 N.W. 988 (1921), arguing that it requires us to hold that the summons and complaint here were nullities. However, Francis is distinguishable. First, it was decided three decades before the adoption of the Rules of Civil Procedure, which, we interpret today. Second, the Francis court declared the .summons in that case void not simply because it bore the signature of an out-of-state attorney, but because that attorney’s “untrue and misleading” misrepresentation of having an office in Minnesota prejudiced the defendant’s ability to answer the complaint. Id. at 125-26,182 N.W. at 989-90. That is not the case here.
Finally, the defendants and amicus point to a variety of statutes and rules that forbid out-of-state attorneys from practic *269 ing. law in Minnesota. See, e.g., Minn.Stat. § 481.02, subd. 1 (2014); Minn. Gen. R. Prac.- 5 (stating that out-of-state lawyers may appear in Minnesota courts “provided ... the pleadings are also signed by a lawyer duly admitted to .practice in the State of Minnesota”). They argue that only a holding that the summons and complaint are void will deter the unauthorized practice of law in Minnesota and satisfy our constitutional duty to -regulate the legal profession.
However, our duties include not only regulating the profession but also “granting liberal relief when an innocent party would otherwise be prejudiced by his attorney’s neglect.” Nguyen v. Style Farm Mut. Auto. Ins. Co., 558 N.W.2d 487, 490 (Minn.1997). Further, deterrents to the unauthorized practice of law already exist in the form of criminal prosecution and civil liability. It' is doubtful that dismissing the DeCooks’ case would further heighten awareness by out-of-state attorneys of our practice requirements.
D.
As the defective summons and complaint are not void, next we determine whether the district court abused its discretion in allowing them to be amended. Whether to allow a party to amend a summons and complaint is within the discretion of the district court, so we will review that decision for.an abuse of discretion. See Minn. R. Civ. P. 4.07; Nelson, 240 Minn. at 516, 62 N.W.2d at 80.
The defendants urge us to apply the test for amendment that we adopted in Save Our Creeks v. City of Brooklyn Park, 699 N.W.2d 307, 310-11 (Minn.2005). They contend that, if the Save Our Creeks test is applied, the district court abused,its discretion by allowing amendment. The De-Cooks argue (1) that no specific test is needed other than the requirements of Rule 11.01; (2) that, if a specific test is needed to guide the court’s analysis, we should adopt the test applied to motions to set aside, a judgment for an attorney’s fáilure to comply with a procedural rule, see Finden v. Klaas, 268 Minn. 268, 271, 128 N.W.2d 748, 750 (1964); and (3) that they nonetheless satisfy all the factors in the Save Our Creeks test.
Neither test proposed by the parties applies smoothly to.the -type.of signature defect before us, and given the relative rarity of this particular defect, we see-no need to fashion a specific test- to guide district courts’ discretion. The rules already provide sufficient guidance. - Rule 11.01 requires that the defect be promptly corrected. Rule 4.07 only allows amendment of a summons if “it clearly appears that substantial rights ... [will not] be prejudiced.” Both Rule 4.07 and Rule 15.01, which governs amendment of pleadings, require a court to consider whether allowing the amendment will serve the ends of justice. The district court may consider these standards when it exercises its sound discretion in deciding whether to allow amendment.
In this case, the district court did not abuse its discretion in allowing the amendment to cure the signature. In accord with Rule 11.01, the defect was promptly corrected once it was brought to the attention of the DeCooks. Regarding the requirement's of Rule 4.07 and Rule 15.01, the lack of a Minnesota attorney’s signature on the complaint cannot be.said to have prejudiced the defendants’ ability to answer or undermined the ends of justice in any way.[5] Given these circumstances, *270 the district court’s decision to allow the amendment was not an abuse of discretion.
III.
Because the defective summons and complaint were cured, we must address the conditional cross-appeal brought by the DeCooks.' The DeCooks argue that the district court erred in granting the motion to dismiss for insufficient service as to individual defendants Palmer, Perrohe, McKeon, and Morrow. The DeCooks contend that service was effective upon all of the defendants (including the Medical Center, Hanson, and Pratt) as of January 15, 2014 — the day the Medical Center’s compliance officer, Barbara Graham, returned the acceptance of service form on behalf of all of the defendants.
Whether service,of process was effective, and personal jurisdiction therefore exists, is.a question of law that this court reviews de novo. Shamrock Dev., Inc, v. Smith, 754 N.W.2d 377, 382 (Minn.2008). We apply the facts as found by. the district court unless those findings are clearly erroneous. Id.
In this case, we will assume, without deciding, that the DeCooks’ method of serving the summons and complaint on Graham, absent an agreement with the defendants, did not comply with the requirements of Rule 4. Thus, we turn to the DeCooks’ argument that service was effective because it was made' pursuant to agreement. The DeCooks contend that the individual defendants consented to alternative, or informal, service; specifically, that they agreed to be served with the summons and complaint by email through Barbara Graham.[6]
An agreement to forego formal service and be served in ways not provided for by rule is allowed in Minnesota. Indeed, a defendant may waive service altogether. See Chauncey v. Wass, 35 Minn. 1, 15, 30 N.W. 826, 831 (1886). Every business'day, on behalf of their clients, Minnesota lawyers [7] enter into agreements consenting to receive service in ways not strictly provided for by rule.[8] In deciding whether the parties had such an agreement here, we must first consider what burden, if any, each party bears.
*271 A.-
Minnesota law is clear: when service' of process is challenged, the plaintiff must submit evidence of effective service. Shamrock Dev., Inc., 754 N.W.2d at 384. “Once the plaintiff submits evidence of service, a defendant ... has the burden of showing that the service was improper.” Id.; see Holmen v. Miller, 296 Minn. 99, 104, 206 N.W.2d 916, 919 (1973) (explaining that upon submission of an affidavit of service, “a defendant has the burden of proving” the allegations therein are. untrue).
A plaintiffs obligation to submit evidence of service, and thereby trigger a defendant’s burden to prove insufficient service, is a low hurdle. For instance, in Holmen, we held that the sheriffs affidavit, containing the unsupported assertion that a 13-year old was a person of “suitable age and discretion” to accept substitute service, shifted the burden to the defendant to prove that service was.ineffective. 296 Minn. at 103-05, 206 N.W.2d at 919-20. In Shamrock, we determined that the burden was on the defendant to prove ineffective service when an affidavit supporting service by publication contained the unsupported-assertions that the defendant had “left the state with the intent to defraud creditors, or to avoid service.” 754 N.W.2d at 384-85.
B.
In this case, the DeCooks did, in fact, submit evidence of service. Specifically, they submitted evidence of an agreement: that, to avoid being served personally, the individual defendants would forego formal service and, instead, be served by email through Graham.
The district court’s finding that “[tjhere is nothing in the record that, supports these individuals authorized Graham to accept service on their behalf’ is clearly erroneous. The district court record contains the following evidence: (1) emails from Graham stating that she was authorized to accept service by email on behalf of the defendants, particularly in light of hér explicit statement that she had spoken to one of the defendants and obtained authorization directly from that - defendant; (2) the affidavits of Graham and Offutt which, taken together, demonstrate that Graham represented that she had been authorized to accept service by the defendants themselves; (3) Graham’s emails and affidavit that establish that she is connected to the defendants by her position as the compliance officer at their workplace, which further supports a reasonable inference that she had actual authority from the defendants to accept service of process for them; and (4) the unequivocal acknowledgment of service signed by Graham, expressly on behalf of the defendants, upon receiving the emailed process. All of this is evidence that- there was an agreement for alternative service by email through Graham.
With the DeCooks having produced evidence of service by agreement, the burden of proving ineffective service is on the defendants. Shamrock, 754 N.W.2d at 384. They have failed to meet their burden. In fact, they submitted no contradictory evidence. Not one defendant submitted an affidavit, correspondence with Graham, or any other piece of evidence indicating that any defendant did not .authorize Graham to agree to accept, service. Nor do Graham’s affidavits claim that she had not been so. authorized. Tellingly, the defendants are silent. Thus, they have not carried their burden to prove insufficient service.[9] The district, court there *272 fore erred in granting the defendants’ motion to dismiss.
C.
In spite of the defendants’ reticence to admit whether they received service, the dissent argues at length that the district court properly.dismissed based on principles of agency. The dissent is correct that apparent authority, standing alone, is not sufficient to bind a purported principal for service-of-process purposes. However, that basic statement of law misses .the point because, given that the DeCooks have produced, evidence of an agreement, the burden is on the individual defendants to prove, .that Graham’s authority to consent was not actual, but only apparent, and that service was therefore ineffective. Unlike defendants in the cases cited by the .dissent, these defendants submitted no affidavits or other, evidence .denying that Graham had actual authority to. accept ser,vice for them.. ■.
The dissent relies heavily on Tullis v. Federated Mutual Insurance Co., in which we concluded that service upon an occupational therapist was not sufficient to serve a corporation, in part because the therapist had “at most” only apparent authority. 570 N.W.2d 309, 312-13 (Minn.1997). However, Tullís is distinguishable in a crucial way. Tullís did hot decide whether the plaintiff had submitted evidence to trigger the defendant’s burden of proof, but instead decided whether, after such evidence was submitted, the defendant'had proven insufficient' service. Critically, the Tullís defendants provided actual evidence contradicting the plaintiffs evidence of service, including an affidavit from 'the therapist stating specifically that he denied saying that he was authorized to accept service and that the process server never asked whether he was. See Tullis v, Fed. Mut. Ins. Co., 556 N.W.2d 7, 9 (Minn.App.1996), rev’d, 570 N.W.2d 309 (Minn.1997). By contrasts we hear, from these defendants only the sounds of silence.
IV..
In sum, we conclude* that the summons and complaint bearing only the signature of an attorney not licensed to practice in Minnesota were defective. That signature defect did not render the summons and complaint void, however, and the district court did not abuse its discretion in allowing them to be amended. Thus, we affirm in part the judgment of the court of appeals. , . .
We further conclude that the district court clearly erred in finding that the record contained no evidence that the defendants consented to-service.. The DeCoóks submitted evidence that the defendants had agreed to be served by email through the Medical Center’s compliance officer. Because the DeCooks’ evidence of service was wholly unrebutted, the defendants did not satisfy their burden to prove that service was insufficient. Accordingly,- we reverse in part the judgment of the court of appeals, and remand to the district court for further proceedings consistent with this opinion.
Affirmed in part, reversed in part, and remanded.

. The statute of limitations for medical malpractice claims is 4 years. Minn.Stat. § 541.076(b) (2014). The record does not show, nor is it relevant to this appeal, when the DeCooks realized they might have a claim or when they retained attorneys to pursue it.

. The district court also denied the defendants' motion to dismiss for lack of personal jurisdiction, concluding that no legal argument separate from the insufficient process and insufficient service arguments supported the motion. • '

. The Medical Center does not argue on appeal that the emailed service of process upon it through Graham was insufficient.

. The remaining individual defendants, Palmer, Perrone, McKeon, and Morrow appeared in this appeal as respondents to the DeCooks’ appeal. For simplicity, we refer to the Medical Center and the individual defendants collectively as “the defendants.”

. Indeed, the defendants’ sole argument that the amendment prejudiced them is based on the loss of a statute of limitations defense. However, loss of-such a defense does not on *270 its own constitute the type of prejudice contemplated by the rules regarding amendment and relation back. See Nelson, 240 Minn. at 512-16, 62 N.W.2d at 78-80.

.The defendants contend that consent to informal service was not argued previously and, therefore, we should consider the argument forfeited. We disagree.' First, the DeCooks have argued at all points of this litigation that the defendants authorized Graham to accept service on their behalf via email. Further, the defendants argued at the district court that ‘‘[p]arties may vary the method of service by consent,” and connected that'argument to waiver of formal service. The DeCooks then renewed their argument that the defendants had waived formal service at the court of appeals. The service-by-consent argument the DeCooks present to us on appeal is not "different in kind” than the arguments presented to the district court and court of áp-peals, and it is not forfeited. See Jacobson v. $55,900 in U.S. Currency, 728 N.W.2d 510, 522-23 (Minn.2007).

. For more than 150 years, Minnesota lawyers have accepted service for clients because they, as agents, have recéived authority from their principals, the clients, to agree to accept service. See Masterson v. Le Claire, 4 Minn. 163, 4 Gil. 108 (1860); Smith v. Spitzenberger, 363 N.W.2d 470, 472 (Minn.App.1985).

. Consistent with that custom and practice, recently our Rules of Civil Procedure were amended to reflect a defendant’s right to consent to alternative service methods such as email. Minn. R. Civ. P. 3.01(b); Minn. R. Civ. P, 3.01 advisory comm. cmt. — 2015 amendment. In the absence of agreement, of course, email service to commence an action was and is not allowed.

. Because we conclude that the district court erred in granting the defendants’ motion to *272 dismiss for insufficient service, we need not address the DeCooks’ other arguments that service was effective.