Mary **LAYMON** as the personal representative of the Estate of Howard Arnold Laymon, Respondent,

v.

**MINNESOTA PREMIER PROPERTIES, LLC,**
et al., Appellants.

A17-0162

Court of Appeals of Minnesota.

Filed October 9, 2017

Review Granted in Part Dec. 27, 2017

Kelly Vince Griffitts, Griffitts Law Offices, PLLC, Eagan, Minnesota (for respondent).

John G. Westrick, Westrick & McDowall-Nix, PLLP, St. Paul, Minnesota (for appellants).

Considered and decided by Reyes, Presiding Judge; Schellhas, Judge; and Stauber, Judge.*

## OPINION

SCHELLHAS, Judge

Appellants challenge the district court's summary judgment against them on respondent's quiet-title claim and default judgment against one of them on respondent's slander-of-title claim. By notice of related appeal, respondent challenges the court's denial of default judgment against two appellants on the slander-of-title claim. Because we conclude that the district court properly denied respondent default judgment against appellants, erred in entering default judgment against one of appellants on respondent's slander-of-title claim, and erred in granting summary judgement to respondent, we affirm the denial of default judgment, and reverse the default judgment and summary judgment to respondent, and remand for further proceedings consistent with this opinion.

## FACTS

In June 2005, Howard Laymon purchased real property in Golden Valley (subject property) with mortgage financing from World Savings Bank FSB (World Savings). Howard Laymon died testate in January 2015. He was survived by three adult children, including John Laymon and

respondent Mary Laymon. Howard Laymon's will provides in relevant part:

I give all of my tangible personal property to my children who survive me, to be distributed to them in shares as nearly equal as is practical giving due regard as to the personal preferences of each.

I give the residue of my estate, consisting of all the property I can distribute by will and not effectively distributed by the preceding provisions of this will, except any property over which I then have a testamentary power of appointment, in equal shares to my children, if any that survive me. . . .

I constitute and appoint my daughter, MARY L. LAYMON, to serve as my Personal Representative. . . .

My Personal Representative, in addition to all other powers conferred by law that are not inconsistent with those contained in this will, shall have the power, exercisable without authorization of any court:

a. To sell at private or public sale, to retain, to lease, and to mortgage or pledge any or all of the real or personal property of my estate;

b. To make partial distributions from my estate from time to time and to distribute the residue of my estate in cash or in kind or partly in each, and for this purpose to determine the value of property distributed in kind; [and]

c. To settle, contest, compromise, submit to arbitration or litigate claims in favor of or against my estate . . . .

The mortgage against the subject property in favor of World Savings went into default after Howard Laymon's death. In May 2015, World Savings commenced fore-

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

closure proceedings by publication and served Mary Laymon with an occupant's notice of a foreclosure sale. On June 10, World Savings completed notice by publication of a foreclosure sale. On June 29, Wells Fargo Bank NA (Wells Fargo), as the mortgage servicing agent of World Savings, purchased the subject property through a sheriff's certificate of foreclosure sale.[1] The six-month mortgage-foreclosure redemption period expired on December 29, 2015.

On July 3, 2015, John Laymon and his wife conveyed their interest in the subject property by quitclaim deed to appellant Minnesota Premier Properties LLC (Premier) in exchange for a payment of $10,000. On July 6, Premier's quitclaim deed was recorded and Premier executed a mortgage against the subject property in favor of appellant Aquarium Capital Investments LLC (Aquarium). Aquarium's mortgage was recorded the same day. On July 9, Mary Laymon initiated informal probate of Howard Laymon's estate, and the probate division of the district court (probate court) appointed Mary Laymon as the personal representative of Howard Laymon's estate.

On July 13, 2015, Premier quitclaimed its interest in the subject property to appellant Blue Golds Ventures LLC (BGV), and Aquarium assigned its mortgagee's interest in the subject property to appellant 4Path Realty (4Path).[2] Premier's quitclaim deed and Aquarium's mortgage assignment were recorded on July 15.

On July 31, 2015, the probate court issued letters testamentary to Mary Laymon, allowing her to administer Howard Laymon's estate. On September 16, 2015,

Mary Laymon, as personal representative of Howard Laymon's estate, sued appellants in district court, asserting quiet-title and slander-of-title claims regarding the subject property. On October 6, BGV, as an owner, redeemed the subject property from Wells Fargo and recorded its certificate of redemption. Premier, Aquarium, and BGV jointly and timely answered the complaint. None of the other appellants timely answered the complaint.

On November 23, 2015, Mary Laymon moved for partial summary judgment against appellants on her quiet-title claim. Premier, Aquarium, and BGV jointly opposed the summary-judgment motion. None of the other appellants—4Path, Stonewood, Labatt, and Hermanson—opposed or appeared at the summary-judgment-motion hearing on December 21. On March 21, 2016, the district court granted partial summary judgment against appellants on Mary Laymon's quiet-title claim.

In September 2016, Mary Laymon moved for default judgment against 4Path, Stonewood, Labatt, and Hermanson on her slander-of-title claim. Stonewood, Labatt, and Hermanson jointly opposed the default-judgment motion, and, on October 5, 4Path, Stonewood, Labatt, and Hermanson, filed a joint answer to the complaint. The district court struck the joint answer of 4Path, Stonewood, Labatt, and Hermanson and granted default judgment against "4Path Realty, an assumed name of Stonewood Realty," on Mary Laymon's slander-of-title claim. But the court granted a monetary judgment against "Stonewood Realty LLC, doing business as 4Path Realty." The court subsequently amended its order sua sponte, granting a monetary judgment against "4Path Realty, an assumed name

---

1. The sheriff's certificate of foreclosure sale of the subject property was recorded on July 9, 2015.

2. 4Path Realty is the assumed name of appellant Stonewood Realty LLC (Stonewood). Appellants Nate Labatt and Eric Hermanson are Stonewood's officers.

of Stonewood Realty" on the slander-of-title claim. The court denied Mary Laymon's request for leave to file a motion for reconsideration of the denial of default judgment against Stonewood, Labatt, and Hermanson on her slander-of-title claim.

In November 2016, Mary Laymon moved for default judgment against Labatt (d/b/a 4Path) and Hermanson (d/b/a 4Path) on the slander-of-title claim; moved to amend the caption of the complaint to clarify 4Path's status as an assumed name of Stonewood, Labatt, and Hermanson; and moved to dismiss the slander-of-title claim as to Premier, Aquarium, and BGV. The district court amended the case caption to ·clarify 4Path's status as an assumed name of Stonewood, amending its default-judgment order to reflect a default judgment against "Stonewood Realty LLC d/b/a 4Path Realty" on Mary Laymon's slander-of-title claim; amended the default judgment to include Stonewood as a judgment debtor; denied Mary Laymon's motion for default judgment against Labatt (d/b/a 4Path) and Hermanson (d/b/a 4Path) on her slander-of-title claim; dismissed with prejudice the slander-of-title claim as to Premier, Aquarium, and BGV; and directed entry of judgment on its March 21, 2016 order for partial summary judgment.

· Appellants challenge summary judgment against them on Mary Laymon's quiet-title claim and the default judgment against Stonewood (d/b/a 4Path) on Mary Laymon's slander-of-title claim. In a notice of related appeal, Mary Laymon challenges the denial of default judgment against Labatt and Hermanson on her slander-of-title claim.

## ISSUES

I. Did the district court err in declining to refer Mary Laymon's action against appellants to probate court?

II. Did the district court err in concluding that Mary Laymon has standing to assert quiet-title and slander-of-title claims against appellants on behalf of Howard Laymon's estate?

III. Did the district court otherwise err in entering summary judgment against appellants on Mary Laymon's quiet-title claim?

IV. Did the district court otherwise err in entering default judgment against Stonewood (d/b/a 4Path) on Mary Laymon's slander-of-title claim?

V. Did the district court err in denying default judgment against Labatt and Hermanson on Mary Laymon's slander-of-title claim?

## ANALYSIS

**I. The district court did not err by declining to refer Mary Laymon's action against appellants to probate court.**

Appellants first argue that the district court erred in declining to refer Mary Laymon's action to probate court because it "likely falls into the exclusive jurisdiction of the probate court." Mary Laymon responds that the court did not err because, under Minnesota law, the district court and probate court are one and the same. Appellate courts review the issue of subject-matter jurisdiction de novo. *Zweber v. Credit River Twp.*, 882 N.W.2d 605, 608 (Minn. 2016).

"Minnesota once had many courts of limited jurisdiction," including probate courts. *State v. Irby*, 848 N.W.2d 515, 519 n.3 (Minn. 2014). But in the early 1980s, Minnesota's district courts and probate courts were "consolidated," *In re Estate of Janecek*, 610 N.W.2d 638, 640–41 (Minn. 2000), or "merge[d]," *In re Estate of Mathews*, 558 N.W.2d 263, 265 (Minn. App. 1997), *review denied* (Minn. Mar. 20, 1997).

As a result, "there is no longer a separate probate court system in Minnesota." *In re Guardianship of Doyle*, 778 N.W.2d 342, 345 n.1 (Minn. App. 2010). Now "[t]here is no district court which is not also a probate court, and no distinction between the courts." *Mathews*, 558 N.W.2d at 265; *see* Minn. Stat. § 484.011 (2016) ("The district court shall also be a probate court."). Today, "district courts exercise all the functions of the probate court," *Doyle*, 778 N.W.2d at 345 n.1, and have "jurisdiction over all subject matter relating to estates of decedents," *In re Estate of Jotham*, 722 N.W.2d 447, 450 (Minn. 2006) (quotation omitted).

A district court "may establish a probate division." Minn. Stat. § 484.86 (2016). But still, "[t]he district court has original jurisdiction in all civil ... cases," Minn. Const. art. VI, § 3, including cases "in law and equity for the administration of estates of deceased persons," Minn. Stat. § 484.01, subd. 1(4) (2016), and other cases involving "matters relating to the affairs of decedents," Minn. Stat. § 524.1-201(9) (2016), such as the "construction of wills and determination of heirs and successors of decedents," Minn. Stat. § 524.1-302(a) (2016). We therefore conclude that the district court did not err in declining to refer Mary Laymon's action to probate court.

## II. The district court did not err by concluding that Mary Laymon has standing to assert quiet-title and slander-of-title claims against appellants on behalf of Howard Laymon's estate.

■ Appellants next argue that Mary Laymon lacks standing to assert her title-based claims against appellants. They argue that only John Laymon and his wife— as the sole grantors of the July 3, 2015 quitclaim deed—have standing to challenge the validity of that deed. Mary Laymon claims that, as the personal representative of Howard Laymon's estate, she has not only the right but the duty "to assert the lack of any interest in Appellants in the assets of the estate," including the subject property. Appellate courts review the issue of standing de novo. *In re Gillette Children's Specialty Healthcare*, 883 N.W.2d 778, 784 (Minn. 2016).

■ "Standing must exist at all stages of the litigation, including when a plaintiff brings a cause of action and when a party appeals a decision." *In re Guardianship of Tschumy*, 853 N.W.2d 728, 764 (Minn. 2014) (quotation omitted). Under Minnesota law, "[s]tanding is acquired in two ways: either the plaintiff has suffered some 'injury-in-fact,'" *Gillette*, 883 N.W.2d at 783 (alteration in original) (quotation omitted), defined as "a concrete and particularized invasion of a legally protected interest," *Webb Golden Valley, LLC v. State*, 865 N.W.2d 689, 693 (Minn. 2015) (quotation omitted), "or the plaintiff is the beneficiary of some legislative enactment granting standing," *Gillette*, 883 N.W.2d at 783 – 84 (quotation omitted).

■ By Minnesota statute, "the personal representative has standing to assert claims on behalf of the decedent's estate." *Sec. Bank & Tr. Co. v. Larkin, Hoffman, Daly & Lindgren, Ltd.*, 897 N.W.2d 821, 824 (Minn. App. 2017), *review granted* (Minn. Aug. 8, 2017). For one, "a personal representative of a decedent domiciled in this state at death has the same standing to sue and be sued in the courts of this state and the courts of any other jurisdiction as the decedent had immediately prior to death." Minn. Stat. § 524.3-703(c) (2016). In addition, "a personal representative, acting reasonably for the benefit of the interested persons, may ... prosecute or defend claims, or proceedings in any jurisdiction for the protection of the estate and of the personal representative in the

**14**

performance of duties." Minn. Stat. § 524.3-715(22) (2016).

██ "A personal representative 'is under a duty to see that the assets constituting the testator's estate are not diverted from the course prescribed by the testator.'" *In re Estate of Schroeder*, 441 N.W.2d 527, 530 (Minn. App. 1989) (quoting *In re Estate of Healy*, 247 Minn. 205, 209, 76 N.W.2d 677, 680 (1956)), *review denied* (Minn. Aug. 15, 1989); *see* Minn. Stat. § 524.3-703(a) (2016) (providing that "[a] personal representative is under a duty to settle and distribute the estate of the decedent in accordance with the terms of any probated and effective will and applicable law"). A personal representative also has the duty "to evaluate and pursue claims that would benefit the estate." *Prof'l Fiduciary, Inc. v. Silverman*, 713 N.W.2d 67, 71 (Minn. App. 2006), *review denied* (Minn. July 19, 2006).

██ Appellants appear to base their standing argument on other arguments, which we address later in this opinion, that neither the estate nor its personal representative has an ownership interest in the subject property. But their argument conflates the standing question—whether Mary Laymon, in her capacity as the personal representative, may seek an answer to the merits question in district court— with the question raised by Mary Laymon's quiet-title and slander-of-title claims, i.e., who has an ownership interest in the subject property.

As the personal representative of Howard Laymon's estate, Mary Laymon may prosecute claims for the protection of the estate and for the protection of herself in the performance of her duties of administration, including her duty to distribute the subject property or its value in equal shares to Howard Laymon's three surviving children. Appellants indisputably executed and recorded conveyances that Mary

Laymon alleges cloud title to the subject property, in which Mary Laymon further alleges that "[the estate] has an interest ... free and clear of the interests of all [appellants]." We conclude that those allegations are sufficient to confer standing here. *See Schiff v. Griffin*, 639 N.W.2d 56, 60 (Minn. App. 2002) (stating that "a determination of standing must not be based on the substantive merits or prospective success of a claim"); *cf. In re Appeal of Selection Process for Position of Electrician*, 674 N.W.2d 242, 247 (Minn. App. 2004) (stating that "[s]tanding is a low hurdle because [one] need only allege" its basis), *review denied* (Minn. Apr. 20, 2004).

### III. The district court erred by granting summary judgment in favor of Mary Laymon and against appellants on Mary Laymon's quiet-title claim.

██ The district court concluded that the July 3, 2015 quitclaim deed from John Laymon and his wife to Premier transferred no valid ownership interest in the subject property and therefore granted summary judgment against appellants on Mary Laymon's quiet-title claim. Appellants challenge the court's conclusion, arguing that "John Laymon's interest in [the subject property] devolved immediately upon Howard Laymon's death, subject to [Mary Laymon]'s right of administration," and that John Laymon's "devolved one-third interest in the [subject property] was assignable." Appellate courts review summary judgment de novo "to determine whether there are genuine issues of material fact and whether the district court erred in its application of the law." *Montemayor v. Sebright Prod., Inc.*, 898 N.W.2d 623, 628 (Minn. 2017) (quotation omitted).

██ "Minnesota has long recognized the principle that title to a decedent's es-

tate vests automatically" in the decedent's heirs or devisees at the moment of his death. *In re Beachside I Homeowners Ass'n*, 802 N.W.2d 771, 774 (Minn. App. 2011); *see, e.g., In re Estate of Mokros*, 268 Minn. 438, 446, 130 N.W.2d 121, 127 (1964) (rejecting contention that "the final decree in the probate proceedings constituted the source of title of the heirs to the property" and concluding that "the actual ownership of the property by the heirs became effective on . . . the date of death of [the decedent]"); *Bengtson v. Setterberg*, 227 Minn. 337, 359, 35 N.W.2d 623, 634 (1949) ("The title to all real estate vests in the decedent's heirs or devisees immediately upon his death."); *In re Estate of Freeman*, 151 Minn. 446, 449, 187 N.W. 411, 412 (1922) ("The rule is that a will speaks as of the death of the testator . . . ."). That principle now is codified as follows:

> Upon death, a person's real and personal property devolves to the persons to whom it is devised by last will . . . , or in the absence of testamentary disposition, to the decedent's heirs, . . . subject to the provisions of sections 525.14 and 524.2-402, the allowances provided for by sections 524.2-403 and 524.2-404, to the rights of creditors, elective share of the surviving spouse, and to administration.

Minn. Stat. § 524.3-101; *see Beachside*, 802 N.W.2d at 774 (stating that "Minnesota has largely adopted the provisions of the Uniform Probate Code (UPC)" and noting that even "prior to the adoption of the UPC, a decedent's estate passed immediately to his or her heirs by operation of law").

*Beachside* is the only published opinion of a Minnesota court to discuss Minn. Stat. § 524.3-101 in any detail. In *Beachside*, the decedent held title to real property when she died intestate; "probate proceedings were never initiated." *Beachside*, 802 N.W.2d at 772. "By operation of the intestacy statutes," the decedent's nephew "received a one-quarter interest in her estate." *Id.* Several years later, the nephew transferred his alleged ownership interest in the property to a business entity by quitclaim deed; subsequent transfers ensued. *Id.* at 772–73. Ultimately, a creditor challenged the transfers, arguing that, "absent a probate court adjudication that [the nephew] was an heir, [the nephew] never obtained an interest in the property that allowed him to make the original [transfer]." *Id.* at 773. The district court rejected the creditor's argument and concluded that the nephew's interest in the property "passed immediately to [him] upon [the decedent]'s death by operation of law" and that the original transfer and all subsequent transfers therefore were valid. *Id.* The creditor appealed; this court affirmed, applying Minn. Stat. § 524.3-101, and concluded that the nephew obtained a valid, transferrable ownership interest in the property immediately upon the decedent's death. *Id.* at 772, 775.

Although *Beachside* involved an intestate decedent rather than a decedent like Howard Laymon, who died testate, the plain language of the relevant statutory provision contains no distinction between property devised by will and property that passes through intestacy. *See* Minn. Stat. § 524.3-101 ("Upon death, a person's real and personal property devolves to the persons to whom it is devised by last will . . . , or in the absence of testamentary disposition, to the decedent's heirs . . . ."). Just as a valid, transferable ownership interest in real property devolves immediately upon the death of an intestate decedent, a valid, transferable ownership interest in real property devolves immediately upon a testator's death to a person to whom the property is devised by the testator's will.

Minn. Stat. § 524.3-101; *Beachside*, 802 N.W.2d at 775.

The devolved interest is "subject to . . . administration." Minn. Stat. § 524.3-101. During the period of administration, "every personal representative has a right to, and shall take possession or control of, the decedent's property." Minn. Stat. § 524.3-709 (2016). Indeed,

> a personal representative, acting reasonably for the benefit of the interested persons, may properly . . . sell, mortgage, or lease any real or personal property of the estate or any interest therein, including the homestead, . . . without the consent of any devisee or heir unless the property has been specifically devised to a devisee or heir by decedent's will . . . .

Minn. Stat. § 524.3-715(23) (2016). That is because the personal representative

> has the same power over the title to property of the estate that an absolute owner would have, in trust however, for the benefit of the creditors and others interested in the estate. This power may be exercised without notice, hearing, or order of court and when so exercised shall transfer good title to the transferee to the same extent that decedent had title thereto . . . .

Minn. Stat. § 524.3-711 (2016).

But the personal representative's administrative power over estate property does not divest an heir or devisee of his immediately devolved ownership interest in that property. As explained by a noted practice manual for the UPC:

> The [UPC] provides . . . for devolution of title upon death to the successors. This devolution is expressly stated to be "subject to . . . administration" and the right to possession and control

of the decedent's property in administered estates is vested in the [personal representative] . . . . Thus, "title" and "power to possess and control" are to be distinguished.

> . . . .

> . . . Since the [personal representative] has a "power over the title" rather than "title[,]" no gap in title will result if the [personal representative] does not exercise his power during the administration. The title of the heir or devisee, however, is "subject to administration"; hence, it remains encumbered so long as the estate is in administration or is subject to further administration.

1 Am. Law Inst., *Uniform Probate Code Practice Manual* 316–18 (Richard V. Wellman ed., 2d ed. 1977). In other words, while the heir or devisee holds only encumbered title to the property until the period for administration has ended, he nevertheless has a valid ownership interest in the property from the moment of the decedent's death, and that interest may be transferred to another at any time during the period for administration—albeit subject to the same encumbrance that preceded the transfer.

In this case, the district court incorrectly concluded that John Laymon received no valid, transferrable ownership interest in the subject property upon Howard Laymon's death, reasoning that "the rights and title to the Property were not specifically devised to John Laymon" and that "the will awards John Laymon only an interest in the residue of the estate." Our research has uncovered no basis in Minnesota law to distinguish between the devolution of real property that is devised through a residuary clause and the devolution of real property that is specifically devised.[3]

---

3. At least one unpublished opinion of this court suggests that residuary devises, like spe-

We also consider judicial decisions from other states that have adopted the UPC. *See* Minn. Stat. § 524.1-102 (2016) (providing that Minnesota's probate code must be "applied to promote the underlying purpose and policies" of the UPC, including "to make uniform the law among the various jurisdictions"); *Beachside*, 802 N.W.2d at 774–75 (looking to "other jurisdictions that have applied identical provisions from the UPC" in construing and applying Minn. Stat. § 524.3-101); *see generally* Minn. Stat. § 645.22 (2016) (stating that "[l]aws uniform with those of other states shall be interpreted and construed to effect their general purpose to make uniform the laws of those states which enact them"). Those decisions bolster our resolve that residuary devises, like specific devises, may result in immediate devolution upon the testator's death. *See, e.g., Ruzicka v. Ruzicka*, 262 Neb. 824, 635 N.W.2d 528, 534 (2001) (stating that "each ... residual devisee is the vested titleholder of an interest in the real property presently included in the residue of the estate"); *In re Estate of Johnson*, 863 N.W.2d 215, 219–22 (N.D. 2015) (agreeing that residuary devisees took title to estate property immediately upon testator's death, subject to administration).

▇▇ Accordingly, we hold that a valid, transferrable ownership interest in real property devolves immediately upon a testator's death to a person to whom the property is devised by the testator's will, even if the property is devised through a

residuary clause rather than as a specific devise. The district court erred in concluding otherwise, and the court's summary-judgment analysis hinged on its error of law. We therefore reverse the summary judgment against appellants on Mary Laymon's quiet-title claim and remand that claim for further proceedings consistent with this opinion.[4]

## IV. The district court erred by entering default judgment against Stonewood (d/b/a 4Path) on Mary Laymon's slander-of-title claim.

▇▇ Finally, appellants argue that "[t]he district court should not have entered the default judgment" against Stonewood (d/b/a 4Path) on Mary Laymon's slander-of-title claim because "she was not entitled to relief" on that claim. Mary Laymon responds that, "[b]y failing to answer, [Stonewood] ... admitted the elements of slander of title," including "$13,441.22 in damages relating to attorney fees incurred to clear title." We review an entry of default judgment for abuse of discretion. *Black v. Rimmer*, 700 N.W.2d 521, 525 (Minn. App. 2005) (citing *Coller v. Guardian Angels Roman Catholic Church of Chaska*, 294 N.W.2d 712, 715 (Minn. 1980)), *review dismissed* (Minn. Sept. 28, 2005).

▇▇ To obtain default judgment against a defendant, a plaintiff generally need do no more than aver that the defendant has failed to timely answer the complaint. *See* Minn. R. Civ. P. 55.01 (provid-

---

cific devises, may result in immediate devolution upon the testator's death. We recognize that unpublished opinions are not precedential, Minn. Stat. § 480A.08, subd. 3 (2016), and "are of persuasive value [a]t best," *Skyline Vill. Park Ass'n v. Skyline Vill. L.P.*, 786 N.W.2d 304, 309 (Minn. App. 2010) (alteration in original) (quotation omitted).

4. On remand, the district court must reconsider the parties' arguments regarding the legal result, if any, of (1) BGV's October 6, 2015 redemption of the subject property, and (2) the December 29, 2015 expiration of the redemption period. We urge the court to examine our opinion in *Bradley v. Bradley*, 554 N.W.2d 761 (Minn. App. 1996), *review denied* (Minn. Dec. 23, 1996), before addressing the redemption issues.

ing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend within the time allowed therefor by these rules or by statute, and that fact is made to appear by affidavit, judgment by default shall be entered against that party"). But default judgment may be inappropriate absent sufficient evidence to support an award of damages. *See Wiethoff v. Williams*, 413 N.W.2d 533, 537 (Minn. App. 1987) (reversing district court's denial of defendant's motion for relief from default judgment against him, reasoning in part that "meager evidence support[ed] the award of damages").

 "Attorney fees and costs reasonably necessary in an action to clear clouds on title resulting from slander of title are special damages" that are recoverable in a slander-of-title claim. *Paidar v. Hughes*, 615 N.W.2d 276, 277 (Minn. 2000). But a defendant is liable only for reasonable attorney fees and costs that were "necessarily incurred" by the plaintiff as a "direct result" of the defendant's tortious conduct. *See id.* at 281 (discussing the requirement of causation in the context of attorney-fee damages on a slander-of-title claim). The defendant is not liable for attorney fees and costs for legal actions taken by the plaintiff that cannot be traced to the defendant's tortious conduct. *See id.* (remanding for determination "whether any or all of the attorney fees alleged by [plaintiff] were a direct consequence" of defendant's tortious conduct).

 In this case, the district court entered default judgment against Stonewood (d/b/a 4Path) in the amount of $13,441.22 "[a]s ... damages for slander of title" based on (1) an affidavit of Mary Laymon's attorney averring that Mary Laymon has "paid and incurred" $13,441.22 in itemized "costs and disbursements," including $11,107.22 in attorney fees; and (2) an invoice from Mary Laymon's attorney detailing charges for "professional services rendered" and "additional charges." Together, the affidavit and invoice show that the $13,441.22 damages figure reflects all attorney fees and costs incurred by Mary Laymon in bringing quiet-title and slander-of-title claims against all appellants. For instance, the damages figure includes the costs of service on all appellants; attorney fees for reviewing and analyzing the joint answer of Premier, Aquarium, and BGV; and attorney fees and costs for mediation.

The only allegation of tortious conduct that Mary Laymon made against Stonewood (d/b/a 4Path) is that it received by assignment Aquarium's alleged interest in the July 6, 2015 mortgage on the subject property. On these facts, we conclude that the district court abused its discretion by entering default judgment against Stonewood in an amount equal to all attorney fees and costs incurred by Mary Laymon in bringing her title-based claims against all appellants.

## V. The district court did not err by denying default judgment against Labatt and Hermanson on Mary Laymon's slander-of-title claim.

 In her related appeal, Mary Laymon argues that the district court erred in denying default judgment against Labatt and Hermanson on her slander-of-title claim. Appellants respond that the issue is moot and argue that, in any event, the district court did not err in denying default judgment against Labatt and Hermanson. Appellate courts review the issue of mootness de novo, *Wayzata Nissan, LLC v. Nissan N. Am., Inc.*, 875 N.W.2d 279, 284 (Minn. 2016), and review a denial of default judgment for abuse of discretion, *Black*, 700 N.W.2d at 525.

We first consider appellants' mootness argument. See Wayzata Nissan, 875 N.W.2d at 283 (characterizing issue of mootness as "a threshold matter"). "Mootness has been described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." Dean v. City of Winona, 868 N.W.2d 1, 4–5 (Minn. 2015) (quotations omitted). "An appeal should be dismissed as moot when a decision on the merits is no longer necessary or an award of effective relief is no longer possible." Id. at 5. "But an appeal is not moot when a party could be afforded effective relief." Wayzata Nissan, 875 N.W.2d at 283.

Appellants argue that Mary Laymon, having secured a default judgment on her slander-of-title claim against Stonewood (d/b/a 4Path) and having "agreed" to dismiss with prejudice her slander-of-title claim against Labatt and Hermanson, is precluded by res judicata principles from asserting the "same claim" against Labatt and Hermanson in a "successive suit[ ]." According to appellants, because any such claim is precluded, "no relief can be granted," and the issue of whether the district court erred in denying default judgment against Labatt and Hermanson therefore is moot.

Appellants are mistaken. Mary Laymon sought to dismiss her slander-of-title claim only as to Premier, Aquarium, and BGV; she sought not dismissal but default judgment on her slander-of-title claim as to Labatt and Hermanson. The district court accordingly dismissed the claim with prejudice only as to Premier, Aquarium, and BGV. By contrast, the court resolved the claim as to Labatt and Hermanson by denying default judgment against them and striking their untimely answer. And Mary Laymon's argument to this court is not an attempt to reassert her slander-of-title claim against Labatt and Hermanson in a successive suit. Rather, Mary Laymon asks us to reverse the denial of default judgment and remand for entry of default judgment against Labatt and Hermanson—i.e., effective relief that is within our power to afford her. See Thayer v. Am. Fin. Advisers, Inc., 322 N.W.2d 599, 600, 602 (Minn. 1982) (reversing order denying default judgment and remanding for entry of default judgment where district court abused its discretion by denying default judgment), abrogated on other grounds by Onvoy, Inc. v. SHAL, LLC, 669 N.W.2d 344 (Minn. 2003).

Because the default-judgment issue is not moot, we turn to its merits. The district court denied default judgment against Labatt and Hermanson on the grounds that Labatt and Hermanson were not served with the summons and complaint in their individual capacities, implicitly concluding that the court lacked personal jurisdiction over Labatt and Hermanson. Mary Laymon argues that the court thereby erred, elevating "form over substance," because the affidavits of service show that "Labatt and Hermanson were handed the summons and complaint which identified [them] as parties." Appellants respond that the affidavits show that Labatt and Hermanson were served only in their capacities as corporate officers of Stonewood and not in their capacities as individuals.

As recognized by the district court, "service of process is the means by which a court obtains personal jurisdiction over a defendant," McCullough & Sons, Inc. v. City of Vadnais Heights, 883 N.W.2d 580, 590 (Minn. 2016), and default judgment may not be entered against a defendant over whom the court has no personal jurisdiction, see Hengel v. Hyatt, 312 Minn. 317, 318, 252 N.W.2d 105, 106

(1977) ("If the judgment is void for lack of jurisdiction, it must be set aside . . . ."). Service is accomplished "[u]pon an individual by delivering a copy to the individual personally or by leaving a copy at the individual's usual place of abode with some person of suitable age and discretion then residing therein." Minn. R. Civ. P. 4.03(a).

■■■■ "Minnesota law is clear: when service of process is challenged, the plaintiff must submit evidence of effective service." *DeCook v. Olmsted Med. Ctr., Inc.*, 875 N.W.2d 263, 271 (Minn. 2016). "Once the plaintiff submits evidence of service, a defendant has the burden of showing that the service was improper." *Id.* (quotation omitted). Although "[a] plaintiff's obligation to submit evidence of service, and thereby trigger a defendant's burden to prove insufficient service, is a low hurdle," which may be cleared even by "unsupported assertions" in an affidavit of service, some evidence of service is required to shift the burden on the defendant. *Id.*

Here, the affidavits of service aver in relevant part that the affiant served the summons and complaint (1) "upon: 4Path Realty, therein named, personally . . . , by handing to and leaving with Eric M. Hermanson, President, a true and correct copy thereof" and "by handing to and leaving with Nathan Labatt, Owner & Officer, a true and correct copy thereof"; (2) "upon: Blue Golds Ventures, LLC, therein named, personally . . . , by handing to and leaving with Eric M. Hermanson, President, a true and correct copy thereof"; (3) "upon: Aquarium Capital Investments, LLC, therein named, personally . . . , by handing to and leaving with State of Minnesota, by handing to and leaving with John Lamey, Registered Agent, a Managing Agent for said Aquarium Capital Investments, LLC, a true and correct copy thereof"; and (4) "upon: Minnesota Premier Properties, LLC, therein named, personally . . . , by handing to and leaving with John Lamey, Registered Agent, a Managing Agent for said Minnesota Premier Properties, LLC, a true and correct copy thereof." The affidavits do not aver service of the summons and complaint on Labatt and Hermanson "personally." Neither do the affidavits aver that Labatt and Hermanson are named in the complaint.

Furthermore, the summons and complaint do not clearly name Labatt and Hermanson in their individual capacities. The summons and complaint are captioned as follows:

Mary L. Laymon as the Personal Representative of the Estate of Howard Arnold Laymon,

Plaintiff,

vs.

Minnesota Premier Properties, LLC, a Minnesota Limited Liability Company, Aquarium Capital Investments, LLC, a Minnesota Limited Liability Company, Blue Golds Ventures, LLC, a Minnesota Limited Liability Company, 4Path Realty, an assumed name of Stonewood Realty LLC, Nate John Labatt, and Eric Matthew Hermanson, ABC Corporation; Jane Doe and Mary Roe;

Defendants.

Similarly, the summons states:

THIS SUMMONS IS DIRECTED TO: Minnesota Premier Properties, LLC, a Minnesota Limited Liability Company, Aquarium Capital Investments, LLC, a Minnesota Limited Liability Company, Blue Golds Ventures, LLC, a Minnesota Limited Liability Company, 4Path Realty, an assumed name of Stonewood Realty LLC, Nate John Labatt, and Eric Matthew Hermanson.

In our view, the two captions and the summons's "DIRECTED TO" statement may be read to name Labatt and Hermanson in their individual capacities but also

may be read to identify Labatt and Hermanson as users of the assumed name "4Path Realty."

In addition, the complaint describes the parties as follows:

1. Plaintiff is the Estate for Howard Arnold Laymon (hereinafter "Plaintiff"), whose homestead was [the subject property].

2. Defendant Minnesota Premier Properties, LLC, (hereinafter "MPP") is a Minnesota Limited Liability Company the registered agent and office of which is Lamey Law Firm, PA .... David Zins is a member and officer of the limited liability company.

3. Defendant Aquarium Capital Investments, LLC, (hereinafter "ACI") is a Minnesota Limited Liability Company the registered agent and office of which is John D. Lamey III .... David Zins is a member and officer of the limited liability company.

4. Defendant Blue Golds Ventures, LLC (hereinafter "BGV") is a Minnesota Limited Liability Company the registered agent and office of which is Eric M. Hermanson .... Upon information and belief, Eric M. Hermanson is a member and officer of the limited liability company.

5. Defendant 4Path Realty is an assumed name of Stonewood Realty, LLC, Nate John Labatt, and Eric Matthew Hermanson whose principal place of business is [address].

Nowhere does the complaint directly label Labatt and Hermanson as "defendants."

On these facts, we conclude that the district court did not abuse its discretion in denying default judgment against Labatt and Hermanson based on its determination that Labatt and Hermanson were not served in their individual capacities.

## DECISION

A valid, transferrable ownership interest in real property devolves immediately upon a testator's death to a person to whom the property is devised by the testator's will, even if the property is devised through a residuary clause rather than through a specific devise. Accordingly, John Laymon, as devisee of the residuary clause of Howard Laymon's will, and John Laymon's wife, validly conveyed by quitclaim deed their ownership interest in the subject property to Premier. The district court therefore erred by concluding that the quitclaim deed was invalid and that appellants have no valid interest in the subject property. Because Mary Laymon did not effect service of process on Labatt and Hermanson, the district court did not err in denying her default judgment. Mary Laymon is not entitled to summary or default judgment on her claims against appellants.

**Affirmed in part, reversed in part, and remanded.**