STATE OF MINNESOTA

IN SUPREME COURT

A15-0484

Court of Appeals                                                          Lillehaug, J.

Storms, Inc.,

              Respondent,

vs.                                                            Filed: August 17, 2016
                                                            Office of Appellate Courts
Mathy Construction Co.,

              Appellant.

_____

Scott M. Flaherty, Daniel N. Moak, Cyrus C. Malek, Jordan L. Weber, Briggs & Morgan, P.A., Minneapolis, Minnesota; and

Michael A. Murphy, Hammell & Murphy, P.L.L.P., Caledonia, Minnesota, for respondent.

Bruce Jones, Patrick J. O'Connor, Faegre Baker Daniels, LLP, Minneapolis, Minnesota; and

Justin W. Peterson, Moen Sheehan Meyer, Ltd., LaCrosse, Wisconsin, for appellant.

Erik M. Johnson, Assistant Attorney General, St. Paul, Minnesota, for amicus curiae State of Minnesota Commissioner of Transportation.

Robert J. Huber, Stinson Leonard Street LLP, Minneapolis, Minnesota; and

Dean B. Thompson, Fabyanske, Westra, Hart & Thomson, P.A., Minneapolis, Minnesota, for amici curiae Associated General Contractors of Minnesota and Minnesota Asphalt Pavement Association.

_____

1

S Y L L A B U S

On a public highway project where the work was complete, a general contractor did not breach a subcontract by issuing a change order that passed on to its subcontractor a reduction in contract price.

Reversed and remanded.

O P I N I O N

LILLEHAUG, Justice.

This dispute is about a general contractor's change order that reduced the subcontract price on a public highway project. The Minnesota Department of Transportation (MnDOT) contracted with Mathy Construction Company (Mathy) for a highway-repair project in Houston County. Mathy subcontracted with Storms, Inc. (Storms) for excavation and fill work.

After the project was under way, MnDOT's project engineer discovered errors in the estimated quantities of excavation and fill required for Storms' work. After Storms completed its work, MnDOT issued a deductive change order[1] reducing Mathy's contract amount by $327,064.42. Mathy reduced Storms' subcontract by the same amount. Alleging that Mathy's corresponding deductive change order breached the subcontract, Storms sued Mathy for the reduction in the subcontract price.

On cross-motions for summary judgment, the district court granted Storms' motion, concluding that Mathy had breached the subcontract. But the district court reserved

---

[1]     Change orders that result in a reduction in the contract price are known in the industry as "deductive" change orders.

judgment on the question of damages. After a bench trial, the district court concluded that Storms was entitled to recover its fixed costs, but had failed to present evidence to support its claim and thus failed to meet its burden of proof. The court of appeals affirmed in part, holding that Mathy had breached the subcontract. But it reversed in part and remanded, concluding that the district court erred on its damages analysis. We granted review. Because we conclude that Mathy did not breach the subcontract, we reverse the court of appeals and remand to the district court.

On January 28, 2011, MnDOT solicited bids from contractors on a project to repair portions of Minnesota Highways 44 and 76 in Houston County. Mathy, a general contractor, decided to bid. Mathy solicited bids from prospective subcontractors, which were provided copies of MnDOT's Statement of Estimated Quantities. That document laid out the quantities of materials that would be required for the project. Storms submitted a bid to Mathy that was based on the information in the Statement of Estimated Quantities. Mathy used Storms' bid and secured the general contract with MnDOT.

Mathy and Storms then entered into a subcontract. They agreed that the Highway 44 portion of the project was to be completed by May 2011, and the Highway 76 portion by August 2011. Mathy agreed to pay Storms $1,007,890.79 for the work. Section 2 of the subcontract incorporated the terms of the general contract, including MnDOT's Standard Specifications for Construction. Section 12 of the subcontract provided that "[w]here a provision of the General Contract is inconsistent with the provision of this Subcontract, this Subcontract shall govern."

3

When Storms began work on May 16, 2011, it quickly became apparent to Storms, Mathy, and MnDOT that much smaller quantities of material were required than the amounts listed in the Statement of Estimated Quantities. Storms completed its work on May 26, 2011.

MnDOT's project engineer reviewed MnDOT's quantity estimates and concluded that they were incorrect. MnDOT recalculated the quantities. In June 2011, MnDOT informed Mathy of the errors in the Statement of Estimated Quantities and its recalculation.

In November 2011, MnDOT, Mathy, and Storms met to discuss payment for the miscalculated quantities. MnDOT informed Mathy and Storms that it was reducing the contract price, but that Storms, presumably through Mathy, could apply to MnDOT to recover its fixed costs incurred as a result of the change. MnDOT requested that Storms furnish proof of its fixed costs. Storms did not do so.

In January 2012, Mathy submitted a request to MnDOT for payment of the full price in the original contract. MnDOT, Mathy, and Storms met again to discuss payment, but did not reach a resolution.

On May 11, 2012, MnDOT issued a deductive change order that limited payment to Mathy for Storms' work to the actual quantity of material on the project and reduced the general contract price by $327,064.42. By change order, Mathy passed on the decrease to Storms. Storms sued Mathy for breach of contract in order to recover the original subcontract price.

Mathy moved for summary judgment, claiming that under MnDOT Specification 1901, which allows MnDOT to order a change in material quantities, the corresponding

4

reduction in the subcontract price did not constitute a breach. Storms responded with a cross-motion for summary judgment, arguing that Mathy had failed to comply with MnDOT Specification 1402, which requires that alterations in the scope of a project be issued during the course of the work. In January 2014 the district court filed an order for partial summary judgment concluding that Specification 1402 applied and that Mathy had breached the subcontract. The court scheduled the matter for a bench trial on the issue of damages. *See Storms, Inc. v. Mathy Construction Co.*, No. 28-CV-13-235, Order (Hous. Cty. Dist. Ct. filed Jan. 8, 2014).

After the bench trial, the district court reached somewhat different conclusions than in the summary judgment order. Specifically, the court noted that at the time of the summary judgment order, it had not been provided with a MnDOT affidavit, nor had the parties provided the relevant 2005 versions of the MnDOT Specifications in their entirety. *Storms, Inc. v. Mathy Construction Co.*, No. 28-CV-13-235, Order at 3 (Hous. Cty. Dist. Ct. filed Oct. 8, 2014). Based on the new evidence received at the bench trial, the court concluded that Specification 1402 was inapplicable to this case. *Id.* at 4. Instead, the court determined that Specification 1901 applied, and that therefore Storms was entitled only to its fixed costs under MnDOT Specification 1903.2(A).[2] *Id.* at 5. The court also concluded that, based on the available evidence:

---

[2] MnDOT Specification 1903.2(A) provides:

If the final quantity of any Contract item is less than 75 percent of the quantity in the bid schedule, the basis of payment for that Item may be revised to the extent that the evidence justifies an increase in the fixed

[Storms] failed to present any evidence regarding fixed costs. [Storms] failed to meet the burden of proving damages. [Storms] presented no evidence of costs he incurred that did not vary depending on quantity. The damages sought by [Storms] were either initially paid by [Mathy], such as materials and trucking, or were items that would have been affected by a change in quantities.

*Id.* at 9. Accordingly, the district court dismissed Storms' claim for damages. *Id*. at 11.

Storms appealed, arguing that the district court erred by not awarding Storms the full subcontract price. Mathy filed a notice of related appeal arguing that the district court erred in holding that Mathy had breached the subcontract. The court of appeals affirmed in part and reversed in part. *See Storms, Inc. v. Mathy Construction Co.*, No. A15-0484, 2015 WL 7693550 (Minn. App. Nov. 30, 2015). The court of appeals agreed with the district court's holding that Mathy had breached the subcontract, but based its decision on what it called the "plain language" of the subcontract rather than on Specification 1402. *Id.* at *5. The court also reversed the district court's denial of damages and remanded the matter for further proceedings on "contract damages." *Id*. We granted Mathy's petition for review.

As a preliminary matter, Storms asserts that we should dismiss Mathy's appeal as improvidently granted. We see no reason to revisit our decision to grant review. The record is adequate to resolve the issues presented, and how we interpret MnDOT's Specifications has statewide impact. *See* Minn. R. Civ. App. P. 117, subd. 2.

---

expenses chargeable to that Item. In no case will costs incurred prior to the award of the Contract, nor loss of profits be considered as part of these fixed costs.

6

We must decide whether Mathy breached its subcontract with Storms. Storms argues that Mathy cannot pass on to Storms MnDOT's deductive change order. Mathy, of course, disagrees.

On appeal from summary judgment, we review de novo "whether there are any genuine issues of material fact and whether the district court erred in its application of the law to the facts." *Commerce Bank v. W. Bend Mut. Ins. Co.*, 870 N.W.2d 770, 773 (Minn. 2015). Whether language in a contract is plain or ambiguous is a question of law that we review de novo. *Carlson v. Allstate Ins. Co.*, 749 N.W.2d 41, 45 (Minn. 2008).

Our law on contract interpretation is well established. We look to the language of the contract to determine the parties' intent. *Dykes v. Sukup Mfg. Co.*, 781 N.W.2d 578, 582 (Minn. 2010). Put differently, "[w]here there is a written instrument, the intent of the parties is determined from the plain language of the instrument itself." *Travertine Corp. v. Lexington-Silverwood*, 683 N.W.2d 267, 271 (Minn. 2004). "When the language is clear and unambiguous, we enforce the agreement of the parties as expressed in the language of the contract." *Dykes*, 781 N.W.2d at 582. When a contractual provision is unambiguous, we do not "rewrite, modify, or limit its effect by a strained construction." *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 364-65 (Minn. 2009). We construe a contract as a whole and attempt to harmonize all of its clauses. *Chergosky v. Crosstown Bell, Inc.*, 463 N.W.2d 522, 525 (Minn. 1990).

In interpreting the subcontract between Mathy and Storms as a whole, we are reminded by section 2.B that the subcontract incorporates the general contract, including

MnDOT's Standard Specifications for Construction. But section 12 of the subcontract tells us that "[w]here a provision of the General Contract is inconsistent with the provision of this Subcontract, this Subcontract shall govern." Therefore, we consider the incorporated Specifications, and then determine whether anything else in the subcontract is inconsistent with them.

Specification 1901, titled "Measurement of Quantities," provides the procedure for correcting incorrect contract quantities:

> The Engineer will adjust the quantities on (P) designated Contract items when the Engineer revises the dimensions of that work (in which case only the affected portion will be re-determined) or when the Engineer decides that the quantity designated as (P) is incorrect.

Here, (P) refers to plan dimensions. *Id.* MnDOT "generally limit[s] the (P) designated quantities to those items whose dimensions are specified and controlled by field checks during or after construction." *Id.*

Specification 1901 fits the circumstances of this case. It gives the MnDOT engineer the express power to adjust material quantities when MnDOT's estimate is incorrect. Not only does Specification 1901 contain no time limit for the exercise of that power, it contemplates field checks and corrections even "after construction."

Storms, however, directs our attention to Specification 1402.1, titled "Alteration of Work," which provides:

> [MnDOT] may alter the details of construction as necessary for proper completion of the Project and as desired for reasons of public interest. Alterations may be made at any time during the progress of the work, but will not involve added work beyond the limitations imposed by law, nor beyond the termini of the proposed construction except as may be necessary to satisfactorily complete the Project.

8

Storms argues that changes may be made only "during the progress of the work" and not after. But Specification 1402.1 is triggered only when the "details of construction"—the scope of the work—are altered. Here, the scope of the work was not altered; the project remained the same. The deductive change order simply conformed the estimated quantities to the actual scope of the work. Therefore, we conclude that Specification 1901, not Specification 1402, governs unless a specific provision in the subcontract conflicts with it.[3]

Storms urges that there is such a provision: section 10.A of the subcontract. Section 10.A states that the owner (MnDOT) may make changes to the work "by issuing modifications to the General Contract." The contractor (Mathy) must inform the subcontractor (Storms) should any such modification be issued that would affect the subcontractor's work. When so informed, the subcontractor must not take actions "inconsistent with the modifications to the General Contract."

We do not read section 10.A and Specification 1901 to be in conflict because they address different situations. Section 10.A describes how to make changes to the scope of the work, whereas Specification 1901 governs the procedure for correcting errors in estimated quantities. The provisions can be read in harmony with one another. *Chergosky*, 463 N.W.2d at 525. Thus, we conclude that Mathy, after receiving the deductive change

_____

[3] Mathy argues that this reading is also consistent with the 2005 version of Specification 1908. But that specification is not in the record. Given the result we reach, we need not decide whether we could take judicial notice of standard MnDOT specifications.

9

order from MnDOT, did not breach its subcontract with Storms by issuing a corresponding deductive change order to Storms.

The court of appeals' conclusion that the plain language of the subcontract required that any changes be made during the "progress of the work" was incorrect. The phrase "progress of the work" does not appear in the text of the subcontract. Although the phrase is found in Specification 1402, which is incorporated, as we have discussed Specification 1402 is not applicable here.[4]

II.

We conclude that Mathy did not breach its subcontract with Storms. Storms might have had a claim for its fixed expenses under Specification 1903.2, but, as the district court determined, Storms failed to pursue that theory of recovery. We remand to the district court to resolve any remaining issues.

Reversed and remanded.

---

[4] The result here would be the same even had we concluded that section 10.A controlled. Storms argues that a temporal component can be read into section 10.A such that changes to the work may be made only while the work is still in progress. This argument is unavailing because it adds words to the plain and unambiguous language of the subcontract. *Dykes*, 781 N.W.2d at 582; *Travertine*, 683 N.W.2d at 271. The plain language of the last sentence of section 10.A indicates only that "the Subcontractor shall not thereafter order materials or perform work which will be inconsistent with the modifications to the General Contract." This language is not a temporal limitation on a deductive change order.

10