CHUTICH, Justice.
This case requires us to decide whether, under Minnesota Statutes section 524.3-101 (2016), real property devolves to a residuary devisee immediately upon the testator's death.
Appellant Mary Laymon, in her capacity as personal representative to her father's estate, sued respondents Minnesota Premier *451 Properties (Premier) and six others to quiet title to residential property owned by her father, Howard Laymon, at his death.[1] Wells Fargo bought the foreclosed property at a sheriff's sale after Howard's death, and Mary's brother, John Laymon, conveyed his interest in the property by quitclaim deed to Premier a few days later. Because Howard had devised one third of the residue of his estate (which included the foreclosed property) to John, John's ability to transfer a valid ownership interest in the property by quitclaim deed depends on whether section 524.3-101 provides for real property to devolve to a residuary devisee upon the death of the testator.
The district court concluded that John did not transfer a valid ownership interest in his father's property and granted summary judgment to Mary. The court of appeals reversed. It interpreted the statute to allow real property to devolve immediately upon a testator's death to a residual devisee and therefore concluded that John conveyed a valid interest in the property. Laymon v. Minn. Premier Props., LLC , 903 N.W.2d 6, 17 (Minn. App. 2017). Mary seeks review of this interpretation of section 524.3-101. We affirm the decision of the court of appeals, including its remand to the district court for further proceedings.
FACTS
In 2005, Howard bought a house, which he financed with a mortgage. He died testate almost 10 years later, in January 2015. His three adult children, Mary Laymon, John Laymon, and Janet Wolff, survived him. In his will, he named Mary as personal representative of his estate. He also devised all of his "tangible personal property" and the residue of his estate, in equal shares, to his three children.
After Howard died, the mortgage on his property went into default and, in May 2015, the bank began foreclosure proceedings. On June 29, 2015, Wells Fargo bought the property at a sheriff's sale. Shortly after the sale, the court confirmed the appointment of Mary as personal representative and issued her letters testamentary, which enabled her to administer the estate.
Within 4 days of the sheriff's sale, John and his wife conveyed whatever interest they had in the property to Minnesota Premier Properties, LLC (Premier) by quitclaim deed, in exchange for $10,000.[2] A series of transactions based on the conveyance followed,[3] including Premier quitclaiming its interest in the property to Blue Gold Ventures, LLC (Blue Gold). If (and only if) John had an interest in the property at the time he conveyed it to Premier, some or all of the entities that took through Premier have an interest in the property.
On September 15, 2015, Mary, as personal representative of Howard's estate, *452 sued Premier, along with the other entities involved in the transactions related to the property, asserting quiet-title and slander-of-title claims regarding the property. On October 6, 2015, Blue Gold asserted itself as an owner of an interest in the property and redeemed it. Wells Fargo accepted the redemption funds and issued a Certificate of Redemption, which was recorded the same day.
In November 2015, Mary moved for partial summary judgment, and the district court held a hearing in December, about a week before the redemption period was set to expire. The district court granted Mary's motion for partial summary judgment 3 months later, concluding that John did not have an interest to convey to Premier through the quitclaim deed.[4]
The court of appeals reversed the district court on the issue of whether John had a conveyable interest in the property. Interpreting Minnesota Statutes section 524.3-101, it held "that a valid, transferrable ownership interest in real property devolves immediately upon a testator's death to a person to whom the property is devised by the testator's will, even if the property is devised through a residuary clause rather than as a specific devise." Laymon , 903 N.W.2d at 17. It remanded the case to the district court with special instructions to reconsider the result of the October 6, 2015, redemption and the December 29, 2015, expiration of the redemption period. Id. at 17 n.4. Mary petitioned for review on the issue of the interpretation of section 524.3-101 and another issue; we granted review solely on the issue of statutory interpretation.
ANALYSIS
We review an appeal from summary judgment de novo, including "whether there are any genuine issues of material fact and whether the district court erred in its application of the law to the facts." Commerce Bank v. W. Bend Mut. Ins. Co. , 870 N.W.2d 770, 773 (Minn. 2015). Here, we review de novo the meaning of the phrase "persons to whom it is devised by last will" in section 524.3-101 of the Uniform Probate Code to determine whether it includes residuary devisees. See Christianson v. Henke , 831 N.W.2d 532, 535 (Minn. 2013) ("The only disputed issue before us is a question of statutory interpretation, which we review de novo."). Whether John had a transferable interest in the property at the time of the quitclaim conveyance to Premier depends on this interpretation.
The dispute before us concerns the interpretation of the provision that governs the devolution of an estate at death. The provision explains when and to whom a deceased person's property transfers. It states in full:
The power of a person to leave property by will, and the rights of creditors, devisees, and heirs to the person's property are subject to the restrictions and limitations contained in chapters 524 and 525 to facilitate the prompt settlement of estates. Upon death, a person's real and personal property devolves to the persons to whom it is devised by last will or to those indicated as substitutes for them in cases involving lapse, disclaimer, renunciation, or other circumstances affecting the devolution of testate estates, or in the absence of testamentary disposition, to the decedent's heirs, or to those indicated as substitutes for them in cases involving disclaimer, renunciation *453 or other circumstances affecting devolution of intestate estates, subject to the provisions of sections 525.14 [the descent of cemetery lots] and 524.2-402 [the descent of a homestead], the allowances provided for by sections 524.2-403 [the descent of exempt property, including a small amount of personal property] and 524.2-404 [allowing family allowance to be paid out of the state for up to 18 months], to the rights of creditors, elective share of the surviving spouse, and to administration.
Minn. Stat. § 524.3-101 (emphasis added). We have not previously interpreted this provision.
Although the parties disagree about the interpretation of this statute, no one claims that it is ambiguous. Premier contends that property subject to a residuary devise, like property subject to a specific devise, devolves instantly upon death, which would mean that John had an interest in the property when he conveyed it to Premier. We take Mary's position to be that property in the residue does not devolve instantly to residuary devisees.[5] The question for us to decide is whether "persons to whom it is devised by last will" includes residuary devisees. Id.
We interpret statutory language to "ascertain and effectuate" the Legislature's intent. Minn. Stat. § 645.16 (2016). "When the words of a law in their application to an existing situation are clear and free from all ambiguity," id. , our "role is to enforce the language of the statute and not explore the spirit or purpose of the law," Christianson , 831 N.W.2d at 537 (citation omitted) (internal quotation marks omitted). In doing so, we construe the law to "give effect to all its provisions." Minn. Stat. § 645.16 ; see Allan v. R.D. Offutt Co. , 869 N.W.2d 31, 33 (Minn. 2015). We presume that the "[L]egislature intends the entire statute to be effective and certain." Minn. Stat. § 645.17(2) (2016).
In ascertaining the plain meaning of the statute, we construe "words and phrases ... according to rules of grammar and according to their common and approved usage." Minn. Stat. § 645.08(1) (2016). Here, where the Legislature has not provided definitions of the relevant terms, we may consider dictionary definitions to determine a word's common usage. See Shire v. Rosemount, Inc. , 875 N.W.2d 289, 292 (Minn. 2016). The "relevant definition of a term depends on the context in which the term is used," State v. Nelson , 842 N.W.2d 433, 437 n.2 (Minn. 2014), and "technical words and phrases ... are construed according to [their] special meaning or their definition," Minn. Stat. § 645.08(1).
To determine whether a residuary devisee has a transferable interest in property in the residue of an estate, we interpret the meaning of the phrase "devolves to the persons to whom it is devised by last will" in section 524.3-101. "Devolve" is a legal term that means "[t]o transfer (rights, duties, powers, etc.) to another" and, when concerning money or land, means "to pass by transmission or succession." See Devolve , Black's Law Dictionary (10th ed. 2014). According to the Uniform Probate Code, "[p]erson" is "an individual, a corporation, an organization, or other legal entity" and " 'devise,' when used as a noun, means a testamentary disposition of real or personal property and when used as a verb, means to dispose of real or personal property by will." Minn. Stat § 524.1-201(12), (39) (2016). The statute also defines *454 "devisee" as "any person designated in a will to receive a devise." Minn. Stat § 524.1-201(13) (2016). Accordingly, this phrase of the statute communicates that property transfers to the persons designated in the will as devisees.
We conclude that the language "persons to whom it is devised" unambiguously includes residuary devisees. Minn. Stat. § 524.3-101. Nothing from the plain language of section 524.3-101 suggests that devisees of residuary property are treated any differently from specific[6] or general devisees. Nor does section 524.3-101 refer to residuary devisees or any other type of devisee. The Legislature did not distinguish between types of devisees in this provision, but it did make this distinction in other parts of the Uniform Probate Code. See Minn. Stat. § 524.3-902(a) (2016) (listing the order of abatement as "(1) property not disposed of by the will; (2) residuary devises; (3) general devises; (4) specific devises" (emphasis added) ); see also Minn. Stat § 524.2-606(a) (2016) ("A specific devisee has a right to the specifically devised property in the testator's estate at death and [certain additional assets associated with the specifically devised property]." (emphasis added) ).
To "give effect to all [of the statute's] provisions," Minn. Stat. § 645.16, we do not read into the provision a distinction between types of devisees when such a distinction is not explicitly stated. See J.D. Donovan, Inc. v. Minn. Dep't of Transp. , 878 N.W.2d 1, 13 (Minn. 2016) ("[W]e do not, and cannot, add to a statute words intentionally or inadvertently omitted by the Legislature."). Indeed, it would be inconsistent for title to real property to devolve immediately to specific devisees (who are named with the greatest specificity in a will) and to heirs (who are not named in a will at all) but not to devisees under a residuary clause (who are named with a degree of specificity somewhere between the two). We conclude that the plain meaning of "persons to whom [property] is devised by last will" includes persons named as residuary devisees. Minn. Stat. § 524.3-101. Accordingly, a person's property devolves to a residuary devisee "[u]pon death" of the testator, which is to say, immediately. Id.
Howard named all three of his children as residuary devisees, and the residue of his estate included his house. Because we conclude that property in a residuary devise devolves upon death of the testator, the three children's interests in the residue of Howard's estate devolved at his death. Accordingly, John had a transferable ownership interest in his father's house when he and his wife conveyed the interest by quitclaim deed to Premier.
Mary focuses on a different part of section 524.3-101 to contend that John did not have a conveyable interest in the residue. Section 524.3-101 states that "a person's real and personal property devolves ... to those indicated as substitutes for [devisees or heirs] in cases involving ... lapse, disclaimer, renunciation, or other circumstances affecting the devolution of testate estates." (Emphasis added.) We understand Mary to argue that the personal representative's power to sell property in the residue is a "circumstance[ ] affecting the devolution of testate estates" and thus the property devolves to the personal representative as a "substitute." Id.
This argument fails for three reasons. First, the statute already specifically addresses the functions of the personal representative *455 in its reference to "administration." Id. It therefore does not make sense for the statute to also include the power of the personal representative to sell property in the residue in a general reference to "other circumstances affecting the devolution of testate estates," id. See Minn. Stat. § 645.08(3) (2016) ("[G]eneral words are construed to be restricted in their meaning by preceding particular words."); Transp. Leasing Corp. v. State , 294 Minn. 134, 199 N.W.2d 817, 819 (1972) ("Distinctions of language in the same context must be presumed intentional and must be applied consistent with that intent.").
Second, "other circumstances affecting the devolution of testate estates" is part of a larger construction: "a person's real and personal property devolves to the persons to whom it is devised by last will or to those indicated as substitutes for them in cases involving lapse, disclaimer, renunciation, or other circumstances affecting the devolution of testate estates ." Minn. Stat. § 524.3-101 (emphasis added). For Mary's argument to work, the residuary devisees must be encompassed within the category "substitutes for" the "persons to whom" real property "is devised." Id. But the residuary devisees in Howard's will are not "substitutes for" anyone, id. ; they are devisees in their own right, as we have concluded above.
Finally, the personal representative's power to sell property in the residue is not similar to a "lapse, disclaimer, [or] renunciation," meaning that it is inappropriate to consider it to be an "other circumstance[ ] affecting the devolution of testate estates," id. See Emp'rs Liab. Assurance Corp. v. Morse , 261 Minn. 259, 111 N.W.2d 620, 624-25 (1961) (explaining the rule of "ejusdem generis": "where specific words enumerating members of a class are followed by general words capable of including the class," the general words should be construed "as referring to the same kind as those enumerated by the specific words").
Mary's remaining argument also fails. Minnesota Statutes section 524.3-711 gives a personal representative great power over the property of the estate. See Minn. Stat. § 524.3-711 (2016) ("Until termination of the appointment a personal representative has the same power over the title to property of the estate that an absolute owner would have...."). We understand Mary to argue, based on this provision, that because the personal representative has rights to the property that are superior to the rights of Premier, Blue Gold, or any others involved in the transactions related to Howard's property "until termination of the appointment," id. , Premier and the other respondents have no rights to the property during that period of administration. The court of appeals attempted to reconcile the rights of the personal representative and the rights of a residuary devisee by distinguishing between title itself and power over the title. Laymon , 903 N.W.2d at 16-17. We need not decide this issue because Mary's logic is faulty: even if her rights are superior to Premier's, that does not mean that Premier and the other respondents have no rights.
As we have decided above, respondents had an interest that a residuary devisee conveyed to them through a quitclaim deed. That interest was "subject to ... administration." Minn. Stat. § 524.3-101. Blue Gold, the entity that bought the deed from Premier, took steps to protect that interest, whatever its relative strength to Mary's during administration, by redeeming the property. Mary never attempted to sell, redeem, or mortgage the property in her role as personal representative.
We need not determine the precise limitations on respondents' interest during the period of administration because Mary did not exercise any powers of administration *456 inconsistent with respondents' interest. Moreover, we need not decide this issue because we have answered the sole issue raised in the petition for review-whether the court of appeals erred when it held that "under Minn. Stat. § 524.3-101 (2016), a valid, transferable ownership interest in real property devolves immediately upon a testator's death to a person to whom the property is devised by the testator's will, even if the property is devised through a residuary clause rather than through a specific devise." See State v. Myhre , 875 N.W.2d 799, 806 (Minn. 2016) (stating that "we have declined to consider issues that were not raised in the petition for review and not fully developed in the appellant's brief"). We conclude that the court of appeals did not err in so holding.
CONCLUSION
For the foregoing reasons, we affirm the decision of the court of appeals, including the remand to the district court.
Affirmed.
THISSEN, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

Because the facts involve several members of the Laymon family, we use first names in this opinion for clarity.

A quitclaim deed "passes only the estate which the grantor could lawfully convey." Everest v. Ferris , 16 Minn. 26, 32 (Minn. 1870) ; see also Minn. Stat. § 507.06 (2016) ("A deed of quitclaim and release shall be sufficient to pass all the estate which the grantor could convey by a deed of bargain and sale.").

After the transaction with John and his wife, Premier executed and recorded a mortgage against the property in favor of Aquarium Capital Investments, LLC (Aquarium). The next week, Premier quitclaimed its interest in the property to Blue Gold Ventures, LLC and Aquarium assigned its mortgagee's interest to 4Path Realty. The respondents here include the entities involved in these transactions.

The effect of the redemption of the property and the actual ownership interests of the parties, in light of the redemption period that ended shortly after the district court hearing, are not before us.

The parties appear to agree that, under section 524.3-101, real property subject to a specific devise devolves instantly upon death, which was the rule at common law. Bengtson v. Setterberg , 227 Minn. 337, 35 N.W.2d 623, 634 (1949).

A "specific devise" is a "devise that passes a particular piece of property." Devise, Black's Law Dictionary (10th ed. 2014).