STATE OF MINNESOTA

IN SUPREME COURT

A22-1298

Court of Appeals                                                        Chutich, J.
                                                         Took no part, Hennesy, J.

Jeffrey D. Kuhn,

                    Respondent,

vs.                                                           Filed:  June 26, 2024
                                                        Office of Appellate Courts

Richard G. Dunn, et al.,

                    Appellants.

_____

David C. McLaughlin, Carrie E. Backman, Fluegel, Anderson, McLaughlin & Brutlag, Chartered, Ortonville, Minnesota, for respondent.

Alex T. Mastellar, Isak P. Hawkinson, Rinke Noonan, Ltd., Saint Cloud, Minnesota, for appellants.

_____

S Y L L A B U S

1.      The transfer of an interest in a family farm by intestate succession breached the consent-to-transfer clause in the contract for deed.

2.      The breach of the consent-to-transfer provision was a material breach of the contract for deed.

Reversed.

1

O P I N I O N

CHUTICH, Justice.

We are asked to decide whether an intestate transfer of an interest in a family farm breaches a consent-to-transfer provision in a contract for deed. Appellants Richard and Paulette Dunn (the Dunns) entered into a contract for deed with their son, Rory Dunn,[1] for the sale of their farm. The contract for deed provided that Rory "may not sell, assign, or otherwise transfer" his interest in the farm without the written consent of the Dunns. After Rory died 2 years later, the district court ruled that the intestate transfer of Rory's interest in the farm to his young son violated the consent-to-transfer provision and materially breached the contract for deed. The court of appeals reversed and remanded in a divided decision, concluding that the "intestate transfer of Rory's estate as a result of Rory's inaction" did not violate the consent-to-transfer provision. *Kuhn v. Dunn*, 990 N.W.2d 491, 497 (Minn. App. 2023). We hold that the intestate transfer of Rory's interest in the farm violated the consent-to-transfer provision and that this violation was a material breach of the contract for deed. We therefore reverse the court of appeals' decision.

**FACTS**

In 2019, Richard and Paulette Dunn entered into a contract for deed with their son, Rory, for the sale of their family farm. The farm has been in the Dunn family for over 100 years and is recognized as a Century Farm in Douglas County.

---

[1]     Because Rory Dunn shares the same last name as appellants, we use his first name in this opinion for clarity.

2

In an affidavit submitted to the district court, Richard Dunn claimed that the Dunns' intent in entering into the contract for deed was that "the entire property would be undivided and continue to be owned and farmed by a member of the Dunn family." He explained that they gave Rory "better terms and a better price than [he] could have received had the property been divided or sold on the open market," and that was done "[i]n an effort to keep the farm in the Dunn family." The purchase price of the farm under the contract for deed was $662,577, and the multi-year contract stated that it was to be paid in full by 2045. The Dunns explained that they "derived contract language from the Minnesota Uniform Conveyancing Blanks," which required them "to check a box to include a term that prohibits transfer without the seller's consent."

The consent-to-transfer provision in the contract for deed at issue here provided in relevant part:

> **Transfer Restrictions.** Purchaser may not sell, assign, or otherwise transfer Purchaser's interest in this Contract, or the Property, or any part thereof, or if Purchaser is an entity, the controlling interest in Purchaser may not be transferred without the written consent of Seller, which consent shall be granted or withheld in the sole discretion of Seller.[2]

The contract for deed also required the written consent of Seller before Purchaser undertook "repairs or improvements to or replacements of the Property having an aggregate cost" exceeding $75,000. The contract for deed provided that the terms "shall run with the land and bind the parties hereto and the successors in interest."

---

[2] This provision is identical to the template for a transfer-restriction provision in the Minnesota Uniform Conveyancing Blanks.

3

In addition, the contract for deed contained, in relevant part, the following remedies and defaults provision:

> If Purchaser fails to timely perform any term of this Contract, Seller may, at Seller's option, elect to declare this Contract cancelled and terminated by notice to Purchaser in accordance with applicable law or elect any other remedy available at law or in equity. If Seller elects to terminate this Contract, all right, title, and interest acquired under this Contract by Purchaser shall then cease and terminate, and all improvements made upon the Property and all payments made by Purchaser pursuant to this Contract (including escrow payments, if any) shall belong to Seller as liquidated damages for breach of this Contract.

Unfortunately, Rory died only 2 years after the contract for deed was formed. He did not have a will or other estate plan. Consequently, his estate—including his equitable title to the farm under the contract for deed—devolved to his 3-year-old son by intestate succession. Respondent Jeffrey Kuhn was appointed the personal representative of Rory's estate.

After his appointment, Kuhn sent the Dunns a letter of his intent to divide the property and to sell a portion of the farm on the open market. Kuhn explained that there was "probably $1,000,000 of equity in this farm" and that he could not "simply turn away from that equity for the sole heir" and "still fulfill [his] responsibilities as personal representative." The Dunns responded with a notice of cancellation of the contract for deed, characterizing the intestate transfer of Rory's interest to his son without their consent as the "default" event.

Kuhn then sued the Dunns in Douglas County District Court, seeking injunctive relief preventing the cancellation of the contract for deed. The district court denied Kuhn's motion for a temporary injunction. The court explained that the consent-to-transfer

4

provision prohibits the intestate transfer of Rory's interest in the farm because "[a] transfer by operation of law upon death, be it intentional or not, is a transfer for purposes of a contract for deed." In addition, the court sua sponte dismissed the complaint, reasoning that "the relevant facts are not disputed" and the consent-to-transfer provision was "material to the transaction."

Kuhn moved for a new trial. The district court denied Kuhn's motion, noting that there had not been a trial and that the court had granted summary judgment to the Dunns "as there were no material facts in dispute and they were entitled to judgment as a matter of law." After the court affirmed its dismissal of the case, Kuhn appealed to the court of appeals.

A divided panel of the court of appeals issued a decision reversing and remanding the case to the district court. *Kuhn*, 990 N.W.2d at 498. The court of appeals majority held that the intestate transfer of Rory's interest in the contract for deed by operation of law "does not fall within the prohibitions" of the consent-to-transfer provision. *Id.* at 496. The court of appeals stressed that the consent-to-transfer provision "is written in active voice" and is "coupled with the identification of a specified actor"—the "purchaser." *Id.* at 496, 498. Because "Rory took no action to assign or otherwise transfer his interest" in the farm, the court of appeals concluded that the intestate transfer of the interest as a result of his "inaction" did not violate the consent-to-transfer provision. *Id.* at 497–98. The court of appeals did not address Kuhn's alternative argument that any breach of the consent-to-transfer provision was not material. *Id.* at 495 n.9. The court of appeals dissent

5

concluded that the transfer of the interest in the farm by intestate succession materially breached the contract for deed. *Id.* at 503 (Bratvold, J., dissenting).

The Dunns petitioned this court to determine "[w]hether transferring property by intestate succession breaches a consent-to-transfer clause in a contract for deed." We granted review and now reverse the decision of the court of appeals.

## ANALYSIS

At issue here is the interpretation and application of the consent-to-transfer provision in the contract for deed between the Dunns and their son, Rory. "A contract for deed is a financing arrangement which allows a buyer—the vendee—to purchase property by borrowing the money for the purchase from the seller—the vendor." *In re Butler*, 552 N.W.2d 226, 229 (Minn. 1996). The buyer has "all the incidents of ownership except legal title." *Id.* Instead, the buyer has equitable title, and the seller retains legal title "as security" until the purchase price is paid in full. *Id.*

In addressing the parties' dispute, we turn first to the question of whether the transfer of Rory's interest in the farm by intestate succession after his death breached the consent-to-transfer provision in the contract for deed. Second, if the intestate transfer breached the consent-to-transfer provision, we must decide whether that breach was material to the contract.

"On appeal from summary judgment, we consider whether there are any genuine issues of material fact and whether the district court erred in applying the law." *King's Cove Marina, LLC v. Lambert Com. Constr. LLC*, 958 N.W.2d 310, 316 (Minn. 2021). We review the district court's summary judgment decision de novo. *Minnesota Sands, LLC v.*

6

*County of Winona*, 940 N.W.2d 183, 191 (Minn. 2020). The parties' dispute involves the interpretation of a contract for deed. If "terms of the contract may be given their plain and ordinary meaning, construction of the contract is a matter for the court and summary judgment may be appropriate." *Bank Midwest, Minn., Iowa, N.A. v. Lipetzky*, 674 N.W.2d 176, 179 (Minn. 2004). The parties agree that the consent-to-transfer provision of the contract for deed is not ambiguous and that resolution of their dispute on summary judgment was appropriate.

## I.

"Our law on contract interpretation is well established." *Storms, Inc. v. Mathy Constr. Co.*, 883 N.W.2d 772, 776 (Minn. 2016). We look to the contract language to discern the parties' intent. *Id.* "We construe a contract as a whole and attempt to harmonize all of its clauses." *Id.* When the contract language is unambiguous, we enforce the parties' agreement as expressed in the language of the contract, and "we do not 'rewrite, modify, or limit its effect by a strained construction.' " *Id.* (quoting *Valspar Refinish, Inc. v. Gaylord's Inc.*, 764 N.W.2d 359, 364–65 (Minn. 2009)).

The consent-to-transfer provision at issue provides in relevant part:

> **Transfer Restrictions.** Purchaser may not sell, assign, or otherwise transfer Purchaser's interest in this Contract, or the Property, or any part thereof, or if Purchaser is an entity, the controlling interest in Purchaser may not be transferred without the written consent of Seller, which consent shall be granted or withheld in the sole discretion of Seller.

Kuhn does not dispute that consent-to-transfer provisions generally are valid under Minnesota law. *See Bank Midwest, Minn., Iowa, N.A.*, 674 N.W.2d at 179 (noting that we

have held that consent-to-transfer provisions in contracts for deed are "valid and enforceable" (citing *Larson v. Johnson*, 221 N.W. 871, 873 (Minn. 1928))).

The parties' dispute focuses on the meaning of the following language in the contract for deed: "*Purchaser* may not sell, assign, or *otherwise transfer* Purchaser's interest in this Contract, or the Property . . . without the written consent of Seller . . . ." (Emphasis added.) The parties agree that a "transfer" occurred when Rory died intestate. *See Laymon v. Minn. Premier Props., LLC*, 913 N.W.2d 449, 454 (Minn. 2018) (concluding that a devolution at death is a transfer by succession). But the parties disagree on the type of transfer that triggers the consent requirement. The Dunns argue that the consent-to-transfer provision applies broadly to "any and all types of transfers," including the transfer of Rory's interest in the farm to his son by intestate succession. Kuhn, on the other hand, argues that the consent-to-transfer provision applies only to transfers that result from the purchaser's purposeful acts—not to transfers that occur by operation of law, like the intestate transfer here.

Nothing in the consent-to-transfer provision limits the covered transfers to only those that result from the purchaser's purposeful acts. The contract for deed provides that the purchaser "may not sell, assign, or *otherwise transfer*" his interest in the contract or the property without the written consent of the seller. (Emphasis added.) "Transfer" in this context is used as a verb and is defined as "[t]o convey or remove from one place or one person to another; to pass or hand over from one to another, esp. to change over the possession or control of." *Transfer*, *Black's Law Dictionary* (11th ed. 2019) (verb

8

definition). This definition does not limit such transfers to intentional or purposeful conveyances, removals, or changes in possession.

This broad meaning is confirmed by the definition of "transfer" when used as a noun, which "embraces every method—direct or indirect, absolute or conditional, voluntary or involuntary—of disposing of or parting with property or with an interest in property." *Transfer*, *Black's Law Dictionary* (11th ed. 2019) (noun definition). Moreover, one specific method of transfer is "by operation of law." *Id.* Kuhn does not offer a narrower definition of the term "transfer." We therefore conclude that the plain and ordinary meaning of "transfer" encompasses both voluntary and involuntary transfers, including transfers that occur by operation of law. Our conclusion here is consistent with our broad construction of the term "transfer" in another contract-for-deed case, when we relied on the same *Black's Law Dictionary* definition of "transfer" to hold that "the plain and ordinary meaning of 'transfer' " in a consent-to-transfer provision "includes the grant of a mortgage." *Bank Midwest, Minn., Iowa, N.A.*, 674 N.W.2d at 180–81 (noting, among other authorities, that the definition of the noun "transfer" in the 6th edition of *Black's Law Dictionary* includes a mortgage).

The surrounding language in the consent-to-transfer provision supports this broad construction. *See Halla Nursery, Inc. v. City of Chanhassen*, 781 N.W.2d 880, 884 (Minn. 2010) (observing that "the terms of a contract are not read in isolation"). We read the contract as a whole and consider context in construing specific contract terms. *Harkins v. Grant Park Ass'n*, 972 N.W.2d 381, 388 (Minn. 2022). The word "transfer" in the consent-to-transfer provision is preceded by the adverb "otherwise," which means "[i]n a

different way; in another manner" or "[b]y other causes or means." *Otherwise*, *Black's Law Dictionary* (11th ed. 2019). The placement of "otherwise" before "transfer" demonstrates the intent of the parties to ascribe a broad—not narrow—meaning to "transfer." *See id.* ("The term *otherwise* tends to be quite broad in scope"). We therefore conclude that the parties intended for the consent requirement in the contract for deed to apply to transfers by operation of law.

We believe that Kuhn's arguments to the contrary read too much into sentence structure at the expense of the language of the consent-to-transfer provision. According to Kuhn, because the "only subject identified in the sentence is Rory the purchaser," the consent-to-transfer provision applies only to a "purposeful action" by Rory. To be sure, the provision begins in the active voice, with the phrase "Purchaser may not . . . otherwise transfer Purchaser's interest." But the very next phrase is written in the passive voice: "or if Purchaser is an entity, the controlling interest in Purchaser *may not be transferred* without the written consent of the Seller." (Emphasis added.) We have called it myopic to focus on the use of passive voice in a statutory section without regard to context. *Avis Budget Car Rental LLC v. County of Hennepin*, 937 N.W.2d 446, 452 (Minn. 2020). Similarly, it is shortsighted to focus on the use of active voice when nothing in the contract, read as a whole, shows that the parties intended the switch from the active to passive voice in the same sentence to be meaningful. We therefore reject Kuhn's reliance on sentence structure alone to demonstrate the parties' intent to limit the consent-to-transfer provisions to purposeful or planned transfers by the purchaser, as opposed to transfers by operation of law.

10

Kuhn essentially asks us to narrow the plain and ordinary meaning of "transfer" by adding the word "purposefully" to the consent-to-transfer provision: "Purchaser may not . . . otherwise purposefully transfer Purchaser's interest." We decline to "add words" to an unambiguous contractual provision. *Savela v. City of Duluth*, 806 N.W.2d 793, 797 (Minn. 2011). The consent-to-transfer provision says nothing about an active versus an inactive transfer, as Kuhn suggests.[3] If parties to a contract for deed want to exclude certain types of transfers from a consent-to-transfer provision, such as transfers by operation of law, they are free to negotiate those terms. Here the parties used broad, unrestricted language.[4]

---

[3]     The court of appeals dissent questioned Kuhn's position that intestate succession should be characterized as "inaction," pointing out that "intestate succession may be a planned transfer." *Kuhn*, 990 N.W.2d at 502 (Bratvold, J., dissenting). We agree with the dissent. In some cases, persons may decide that their interests are best represented by intestacy and therefore choose not to draft a testamentary device. *See First Nat'l Bank of Minneapolis v. Comm'r of Tax'n*, 84 N.W.2d 55, 59 (Minn. 1957) (noting that by failing to "control the succession" through appointment in a testamentary device, a trust beneficiary "has by necessary implication indicated that those named" in the trust "take upon a default in the [beneficiary's] exercise of the power").

[4]     In support of its conclusion that the consent-to-transfer provision does not apply to an intestate transfer, the court of appeals majority cited our decision in *Castonguay v. Castonguay*, 306 N.W.2d 143 (Minn. 1981). *Kuhn*, 990 N.W.2d at 498 n.15. There, we held that "a transfer of stock ordered by the court in a marriage dissolution proceeding is an involuntary transfer not prohibited under a corporation's general restriction against transfers unless the restriction expressly prohibits involuntary transfers." *Castonguay*, 306 N.W.2d at 146. To reach that holding, we relied on the "settled majority rule" in corporate law that restrictions on corporate stock sales apply only to voluntary sales and not transfers by operation of law, in the absence of a specific provision to that effect. *Id.* at 145–46. The corporate-law context in *Castonguay* is distinguishable from the real-estate context here, in which we have explained the importance of non-assignment and consent-to-transfer provisions to property owners. *See Larson*, 221 N.W. at 872–73 (explaining that because a property owner "is interested in having the property which has

In sum, we conclude that the unambiguous language of the consent-to-transfer provision encompasses transfers by operation of law. Accordingly, we reverse the court of appeals' decision and hold that the consent-to-transfer provision was breached when Rory's interest in the farm passed to his son by intestate succession.

## II.

Having concluded that Rory's intestate transfer of his interest in the farm violated the consent-to-transfer provision, we now consider whether that breach was material. The parties briefed the question of materiality in the district court and the court of appeals. The district court ruled that the breach was material. But because the court of appeals majority concluded that the intestate transfer did not violate the consent-to-transfer provision, only the dissent addressed materiality. *Kuhn*, 990 N.W.2d at 503 (Bratvold, J., dissenting) (concluding that the intestate transfer materially breached the contract for deed because the breach denied the Dunns a "voice" in the selection of the caretaker of their family farm). Although we typically would remand the question of materiality to the court of appeals, the issue has been adequately briefed in earlier litigation, and the record is sufficient for us to decide the question here in the interests of judicial economy. *See* Minn. R. Civ. App. P. 103.04 (stating that appellate courts have discretion to take action that "the interest of justice may require"); *see also, e.g.*, *Frazier v. Burlington N. Santa Fe Corp.*, 811 N.W.2d 618, 628–29 (Minn. 2012) (addressing a question not reached by the court of appeals in the interests of judicial economy).

---

been intrusted to the possession of another properly cared for," the property owner "should have a voice in the selection of a proper caretaker").

We review the district court's summary judgment ruling on materiality de novo to determine whether "a genuine issue of material fact exists" and whether the court erred in applying the law. *Kelly for Washburn v. Kraemer Constr., Inc.*, 896 N.W.2d 504, 508 (Minn. 2017). Here, the Dunns do not dispute that the breach must be material for the seller to cancel the contract for deed. *See Coddon v. Youngkrantz*, 562 N.W.2d 39, 42 (Minn. App. 1997) ("Only a material breach or a substantial failure in performance gives the seller a right to terminate a contract for deed"), *rev. denied* (Minn. July 10, 1997); *cf. Miller v. Snedeker*, 101 N.W.2d 213, 219 (Minn. 1960) ("The rule appears to be well established that only a material breach of a contract or a substantial failure in its performance justifies a party thereto in rescinding").

Although we have never explicitly defined "material breach," we agree with the well-established authorities that have done so. As summarized by Williston's treatise on contracts, "for a breach of contract to be material, it must 'go to the root' or 'essence' of the agreement between the parties, or be one which touches the fundamental purpose of the contract and defeats the object of the parties in entering into the contract, or affect the purpose of the contract in an important or vital way." Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 63:3, at 483–84 (4th ed. 2018). The court of appeals has defined "material breach" in alignment with this authority, *BOB Acres, LLC v. Schumacher Farms, LLC*, 797 N.W.2d 723, 728–29 (Minn. App. 2011), as have other states, *see, e.g.*, *Horton v. Horton*, 487 S.E.2d 200, 204 (Va. 1997) (defining "material breach" as "a failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract"); *Mgmt. Comput.*

13

*Servs. v. Hawkins, Ash, Baptie & Co.*, 557 N.W.2d 67, 77–78 (Wis. 1996) (defining "material breach" as " 'so serious a breach of the contract by the other party as to destroy the essential objects of the contract' " (citation omitted)). Informed by these authorities, we conclude that a "material breach" is a breach that goes to the essence of the parties' agreement, "affect[ing] the purpose of the contract in . . . [a] vital way." Williston at 483–84.

Kuhn argues that the essence of the contract for deed was a financial agreement to ensure that the Dunns retain legal title until they are paid in full, and any breach was immaterial because he was prepared to prepay the contract for deed or assume the scheduled payments. By contrast, the Dunns contend that the essence of the contract for deed was to ensure that they retain significant control of the property until the contract price was paid to preserve the legacy of their multi-generational family farm.

The contracting parties elected to give the Dunns unrestrained authority over the transfer of property interests, in addition to approval of substantial repairs or improvements to the farm. When Rory died, the consent-to-transfer provision ensured the Dunns' control over the determination of his successor. The breach of the consent-to-transfer was material because it went to the Dunns' "voice in the selection of a proper caretaker" for the farm. *Larson*, 221 N.W. at 872–73. And although Kuhn contends that any breach is immaterial because he would ensure that the financial obligations under the consent-to-transfer were satisfied, he also made clear his plans to sell a portion of the farm, which was the event that prompted the Dunns' notice of cancellation. The consent-to-transfer provision was key to ensuring that the Dunns retained meaningful control over the integrity of the family farm

14

until the lengthy contract for deed was fully paid. *Cf. Stand Up Multipositional Advantage MRI, P.A. v. Am. Fam. Ins. Co.*, 889 N.W.2d 543, 448 (Minn. 2017) ("The purpose of an anti-assignment clause is to shield the contracting party from dealing with parties with whom he or she has not chosen to do business"). Accordingly, we conclude that the district court properly determined that the intestate transfer of Rory's interest in the farm was a material breach of the contract for deed.

## CONCLUSION

For the foregoing reasons, we reverse the decision of the court appeals.

Reversed.


HENNESY, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.